## RYAN v. WILLIAMS et al.

### (Circuit Court, E. D. Virginia. January 15, 1900.)

1. PRELIMINARY INJUNCTION—GROUNDS—ANTICIPATING ENACTMENT OF STATUTE.

A court of equity will not grant a preliminary injunction, on the application of a minority stockholder in a railroad company, to restrain the majority from consolidating the company with others, or from taking measures to that end, in anticipation of the passage of a law by a state legislature which will authorize such consolidation, where it is alleged and admitted that under existing laws it cannot legally be effected.

2. CORPORATIONS—SALE OF PROPERTY—PURCHASE BY DIRECTOR.

The fact that the purchaser of property from a corporation is also a stockholder and director of the corporation does not render the transaction void, although it may cast upon him the burden of sustaining it by showing that the sale was proper, fair, made in good faith, and for an adequate consideration.

3. SAME—SUIT BY MINORITY STOCKHOLDERS—PRELIMINARY INJUNCTION.

On an application by a minority stockholder for a preliminary injunction, restraining certain action by the majority pending the litigation, the rights and interests of all the stockholders must be taken into consideration; and where it appears that complainant owns less than one-fifth the stock, and that the contemplated action is approved by virtually all the other stockholders, to warrant the granting of the injunction it must clearly appear to be necessary to the protection of complainant's rights, and that its issuance will not result in greater injury to the rights of the majority than its refusal will to his own.

In Equity. On application for preliminary injunction.

Bernard Carter, W. L. Marbury, W. H. Page, Jr., and D. Lawrence Groner, for complainant.

Cowen, Cross & Bond, Leigh R. Watts, Henry & Williams, L. L. Lewis, and Edgar Allan, for defendants.

WADDILL, District Judge. This cause is now before the court upon an application for injunction, and heard on bill, answers, affidavits of witnesses, and the exhibits filed. The answers deny generally the allegations of the bill, and particularly that anything has been done or contemplated detrimental to the interests of the complainant, or of the company in which he is largely interested; on the contrary, respondents insist that the complainant has been greatly benefited by what has thus far transpired, and that his interests will be yet further enhanced if their plans and purposes are not interfered with. They deny all manner of wrongdoing imputed to them by the complainant, and aver that, so far from having done anything of which he could justly complain, they have exhausted every effort to harmonize with him, and secure his co-operation, and, failing in that, to have him name a figure at which his holdings could be obtained. The complainant admits, for the purposes of this motion, as to material matters in which the averments of the bill are positively denied by the answers and affidavits filed, until proof is taken the court cannot grant the relief asked. But he insists that upon the pleadings according to the defendants' own showing an injunction should now be awarded: First. To restrain the Seaboard & Roanoke Rail-

road Company, its officers and agents, from entering into any agreement to consolidate, or do anything to consolidate, said Seaboard & Roanoke Railroad Company with or merge it into any of the corporations named in the bill, or from in any manner becoming a party to or doing anything to accomplish the scheme of consolidation therein mentioned, or consenting to, permitting, or allowing any mortgage to be placed upon the property or franchises of the said Seaboard & Roanoke Railroad Company for the purpose of securing any bonds that are to be issued as a part of its said scheme of consolidation; the consolidation of the roads sought to be prevented by injunction being those of the Seaboard Air-Line System, containing some 1,000 miles of road, the Georgia & Alabama Railway, about 457 miles, and the Florida Central & Peninsular Railroad Company, some 978 miles, aggregating 2,435 miles. Second. To restrain the said Seaboard & Roanoke Railroad Company, its officers and agents, from making sale of, or doing anything to consummate or perfect a sale of, 7,422 shares of stock of the Raleigh & Gaston Railroad Company, owned by said Seaboard & Roanoke Railroad Company, and alleged to have been sold to Middendorf, Oliver & Co., and to enjoin and prohibit the defendant J. W. Middendorf from doing anything in his individual capacity, or as a member of the firm of Middendorf, Oliver & Co., mentioned in the bill, towards the consummation of any sale made to him or his said firm of said 7,422 shares of stock, and from accepting any transfer or assignment of the certificates of said stock to himself or his said firm, and, if already issued to either, to enjoin and restrain them from making any sale, assignment, or transfer thereof. To the consideration of these two questions I shall address myself. The complainant seeks the intervention of the court as a minority stockholder in the Seaboard & Roanoke Railroad Company (one of the roads in the Seaboard Air-Line System), and insists that the 7,422 shares of stock held by that company in the Raleigh & Gaston Railroad Company, alleged to have been sold to Middendorf, Oliver & Co., gave it the lawful control of the latter road, and in that way the control of the entire Seaboard Air-Line System; his contention, in effect, being that, the defendants Williams and Middendorf and their respective firms, and a syndicate controlled by them, having acquired control of a majority of the stock of the Seaboard & Roanoke Railroad Company, improperly voted the stock owned by that road in the Raleigh & Gaston Railroad Company, and subsequently improperly sold said 7,422 shares, whereby the Seaboard & Roanoke Railroad Company, in which the complainant was largely interested, lost control of the Seaboard Air-Line System, and that said Williams and Middendorf and their said firms and syndicates further proposed to consolidate the roads of the said Seaboard Air-Line System, a most valuable property, regardless of his (complainant's) rights, with the Georgia & Alabama Railway and the Florida Central & Peninsular Railroad Company, as aforesaid, two undesirable properties, which they also owned, and in which the complainant had no interest, to the virtual destruction of his property. The complainant insists that the interests of Messrs. Williams and Middendorf, and those acting with them, in reference to the three railroad systems sought to be

brought into consolidation, are such as to make said Williams and Middendorf, and the present representatives of the majority of the stockholders in the said Seaboard & Roanoke Railroad Company, improper persons to act in that capacity; that their duty, as officers of the Seaboard & Roanoke Railroad Company, is entirely incompatible with that of directors and managers of the Georgia & Alabama Railway and the Florida Central & Peninsular Railroad Company and controllers of the syndicate owning said roads, it being manifestly to the interests, as complainant claims, of the two last-named roads to become a part of the valuable Seaboard Air-Line System, controlled and owned, as he claims, by the Seaboard & Roanoke Railroad Company, and that they, said Williams and Middendorf, having combined to constitute themselves a majority, in order to control the said Seaboard & Roanoke Railroad Company as they see fit, are, for all purposes, the corporation itself, and assume the trust relation occupied by it to its stockholders. In support of this position, complainant cites, among others, the following authorities: Ervin v. Navigation Co. (C. C.) 27 Fed. 625; Farmers' Loan & Trust Co. v. New York & N. R. Co., 150 N. Y. 410, 430, 44 N. E. 1043, 34 L. R. A. 76. It should be borne in mind that the case is not now being heard upon its merits, and no intimation is intended to be expressed herein upon any question of law or fact properly determinable at that time. The only matter now to be considered is whether a proper case has been made for granting an injunction upon either of the two grounds urged. The rights of the parties ultimately will in no manner be affected by either granting or refusing the injunction. New Memphis Gas & Light Co. v. City of Memphis (C. C.) 72 Fed. 953; Hayden v. Directory Co. (C. C.) 42 Fed. 875; Buskirk v. King, 25 U. S. App. 607, 18 C. C. A. 418, 72 Fed. 22. The principles of law controlling at a hearing on its merits are different from those applicable to this motion. It may be conceded that a minority stockholder has the right to seek the intervention of a court of equity against the acts of a majority when such are ultra vires, fraudulent, or illegal. The measure of relief afforded will, of course, depend upon the facts. Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827; Shaw v. Davis, 78 Md. 308, 316, 28 Atl. 619, 23 L. R. A. 294. Whether or not an injunction should be awarded is a matter addressed to the sound discretion of the court, and in its exercise all of the circumstances must be taken into consideration, not only the damage that may arise to the complainant by reason of its refusal, but the damage likely to result to the defendants from its issuance. If there is greater likelihood of damage from the latter than the former, the injunction should, as a rule, be refused. Fost. Fed. Prac. § 233, and cases cited.

On the first ground on which the injunction is sought, complainant insists that the charter of the Seaboard & Roanoke Railroad Company does not authorize its merger with any other company, and therefore, in the absence of an act of the legislature, the contemplated consolidation cannot be entered into by that road, and that all acts and doings on the part of said company and its officers to that end should be forthwith enjoined. In answer to this contention respondents admit that no authority exists for the pro-

posed consolidation, and, moreover, say none is contemplated by them. Complainant insists, on the contrary, that every act of the defendants indicates a determination to effect the immediate consolidation of the roads as soon as authority can be obtained from the legislature of Virginia, and that, unless the court intervenes at this time, the authority will be given, and such action taken, before resort to the court can be had. However apprehensive complainant may be, it does not appear that such an emergency exists as would warrant the court's interposition by the extraordinary remedy of an injunction. If no authority exists to consolidate, and this is conceded, then the merger cannot lawfully be entered into; and no damage, certainly irreparable in character, can be sustained by the complainant as the result of the defendants' effort to do a vain thing. To grant an injunction in anticipation of a possible injury to arise under a law that may never be passed, is, to say the least, unusual. What complainant's rights may be, and what relief should be afforded him in the event of the passage of such a law as he contemplates, cannot now be anticipated. Many questions may, and in all probability will, then arise that are now foreign to this case upon the present condition of the pleadings. The power of the legislature to act, the effect of the law as passed, the character of the action taken, the competency of those acting, the bona fides of the acts performed, and many such like considerations would then have to be taken into consideration.

The second ground on which the injunction is asked to enjoin the sale and transfer of the 7,422 shares of stock in the Raleigh & Gaston Railroad Company, heretofore held by the Seaboard & Roanoke Railroad Company, presents a different and somewhat more difficult question. Complainant insists that the sale of this stock to Middendorf, Oliver & Co. was but a part and parcel of a scheme of the defendants to maintain control of the Seaboard Air-Line System in order to put it into consolidation with the other two lines mentioned; and that the sale was intended, and its effect was, to reduce the Seaboard & Roanoke Railroad Company from the position of the dominant corporation in the system to merely one of the subordinate roads, and to give the Raleigh & Gaston Railroad Company, in which the complainant owned but a few shares of stock, the superior position theretofore occupied by the Seaboard & Roanoke Railway Company. The reasons for this sale and its legality can only be settled when the case is determined on its merits. For the present it may be said that the defendants vigorously deny the motives ascribed to them by the complainant, and insist that a valid reason existed for the disposition of the stock, and that the price obtained for it was a fair one, and the sale in all respects bona fide. Should the court, by way of injunction, at this time seek to annul the sale and direct the control of said stock, in passing it may be said that it does not appear to the court that by the sale of these 7,422 shares of stock of the Raleigh & Gaston Railroad Company the Seaboard & Roanoke Railroad Company thereby lost control of the former road, though it does seem that by reason of the previous issuance and sale of certain treasury stock of the Raleigh

& Gaston Railroad Company by that road, assented to, it is true, by the defendants, representing the Seaboard & Roanoke Railroad Company, the latter company ceased to have a majority of the Raleigh & Gaston Railroad Company's stock. However wrong this act may have been, it cannot be remedied on this motion, if, indeed, at all in this case, and within this jurisdiction, the Raleigh & Gaston Railroad Company being a corporation of the state of North Carolina. It will be conceded that ordinarily a corporation, acting by its directors and stockholders, can dispose of one of its assets; for example, stock held by it in another company. In a word, such a sale, if bona fide made to a person competent to purchase, and without any fraud, is valid. The fact that J. W. Middendorf happened to be a director of both the Seaboard & Roanoke and the Raleigh & Gaston Railroad Companies and a member of the firm of Middendorf, Oliver & Co., making the purchase of the stock, does not necessarily render the sale of the stock to them void, however much it may throw upon him and them the burden of showing, in order to sustain the transaction, that the sale was free from any taint of wrongdoing, bona fide made, and for a fair consideration. Gas Co. v. Berry, 113 U. S. 332, 5 Sup. Ct. 525, 28 L. Ed. 1003; Leavenworth Co. Com'rs v. Chicago, R. I. & P. Ry. Co., 134 U. S. 688, 707, 10 Sup. Ct. 708, 33 L. Ed. 1064; Thomp. Corp. § 4059, and cases cited. The facts that this sale was ratified by the stockholders of each company, that the defendant J. W. Middendorf was one of six directors in one of the roads and one of seven in the other, and that the purchase was made, not by him individually, but by a firm of which he was a member, are circumstances to be taken into account in determining the proper exercise of its discretion. When it is remembered that the firm of Middendorf, Oliver & Co., only one member of which is before the court, will have tied up by the issuance of the injunction prayed for the large sum of $742,200, that of itself should make the court proceed with great caution, and only give the relief asked when it is manifestly necessary to protect and preserve complainant in his rights.

Upon the whole case my conclusion is that the circumstances do not justify granting the injunction asked; that the probability of irreparable damage to the complainant from a failure to award the injunction is at least no greater than the injury likely to result to the defendants should it be awarded, if, indeed, so great. To the present time the complainant does not appear to have been seriously damaged, and I doubt not but with this suit, comprehensive as it is, with all the parties before the court, charged with notice of his claim, serious in character, and affecting all of the property and estate of the Seaboard & Roanoke Railroad Company, and at least all of the parties to this cause dealing with said property, that his rights can and will be fully protected. The rights of the other persons interested in the litigation should not be overlooked, and especially is this true in a case in which a minority stockholder is insisting upon a course to secure his rights believed by practically all of his co-stockholders to be inimical to and utterly destructive of theirs. The complainant's stock, according to the present mar-

ket value, is worth $200 per share (the par value being $100),—that is, $491,200; whereas that of the other stockholders who oppose what complainant wishes is worth some $2,285,600. This refers, of course, only to holdings in the Seaboard & Roanoke Railroad Company. When the interests of those that may be seriously affected by the injunction in the other roads of the Seaboard Air-Line System, of the Georgia & Alabama Railway Company, and the Florida Central & Peninsular Railroad Company, proposed to be consolidated with, are taken into account, the amount reaches to many millions of dollars. The other stockholders in the Seaboard & Roanoke Railroad Company, who believe that $200 is an excellent price, have the right to expect the court to cautiously exercise the discretion asked in an effort to protect a stockholder owning less than one-fifth in amount of the company's stock, when by so doing theirs may be seriously affected. The preliminary injunction prayed for will be refused.