## DADY et al. v. GEORGIA & A. RY. et al.

(Circuit Court, E. D. Georgia, S. D.   January 27, 1900.).

1. COURTS—SEVERAL ACTIONS—JURISDICTION.

Where a railway system, composed of several companies, with continuous lines, extending through several states, is sued by the same stockholder or his privies in separate proceedings in different judicial districts of the United States, to defeat consolidation and break up the system, a proper regard for the dignity and authority of the United States courts demands that the controversy should be disposed of in the first United States court having sufficient jurisdiction of the parties and cause of action.

2. SAME.

In the matter under consideration it appears that the complainant and those acting with him have presented bills in several circuit courts of the United States along the line of the respondent's system, seeking to take the chances of a possible difference of judicial opinion, when the rights in controversy could have been properly determined in the circuit court of the United States for the Fourth circuit, sitting in the Eastern district of Virginia. The evil of this practice discussed.

3. SAME—TEMPORARY INJUNCTION.

There are cases where each court must exercise its independent jurisdiction and render its independent decree, but it should be a very strong case which would justify a court of the United States to grant a temporary injunction when given sufficiently to understand that another such court, with concurrent jurisdiction, upon a plenary bill, has full charge of the same controversy, between the same parties or their privies, or has refused such an injunction.

4. RAILROADS—CONSOLIDATION.

Under the general railway law of Georgia, proper corporate action for the purpose of merger and consolidation of railroads is a majority vote of the stock of the corporation. Code Ga. § 2179; Alexander v. Railroad Co., 33 S. E. 866, 108 Ga. 151.

5. SAME—VOTING TRUST—MERGER.

Where an officer of a corporation is also a member of a voting trust, a merger or consolidation brought about through his vote is not necessarily void; but the burden is on the interest for which he acts to show that the transaction was free from any taint of wrongdoing, bona fide, lawful, and for a fair consideration to the parties at interest.

6. SAME—CREATION OF MONOPOLY.

Where separate lines of railway start out at a right angle from a seaport, transport freight and passengers from widely-separated sections of two states, and no point on either road can be reached in any reasonable time by a passenger starting out on the other, such consolidation does not tend to defeat competition and create monopoly merely because both lines cross two shallow rivers, on which steamboats carrying freight and passengers occasionally ply. This is especially true since the streams in question are also spanned by three other strong railway systems.

7. SAME—INJUNCTION.

The injunction sought in this case refused.

(Syllabus by the Court.)

Joseph M. Terrell, Atty. Gen. of Georgia, Marion Erwin, and Morris Brandon, for complainants.

Walter G. Charlton, John A. Henderson, and Boykin Wright, for respondents.

SPEER, District Judge. The complainants, who are citizens of New York, seek an injunction against J. Skelton Williams and others in order to defeat measures for the consolidation or merging of the Seaboard Air Line System with the Georgia & Alabama Railway, a corporation of this state, and the Florida Central & Peninsular Railway, a corporation of this state and of the state of Florida. The respondent Williams and his associates control by means of an agreement constituting a voting trust a great majority of the stock of these companies, and it is the purpose of Williams and his associates to merge the several properties into a through line from Richmond or Washington City, running southward through the states of Virginia, North Carolina, South Carolina, Georgia, Florida, and Alabama, in order to control as far as may be the traffic of those states, and the great increase in the transportation of freight and passengers which it is anticipated will result from the relations of this country with Cuba and Porto Rico, and from the more general and intimate connection with the other West India islands which may result from our changed political relations with the islands mentioned. The two persons who appear as complainants are apparently the owners of 200 shares of stock in the Georgia & Alabama Railway. They insist that they are entitled to an injunction for the reason that the defendant Williams is the president of the Florida Central & Peninsular Railway Company and of the Georgia & Alabama Railway, and that he thus holds fiduciary positions which conflict the one with the other; that large pecuniary benefits are to flow to him and his associates as a result of the proposed merger or consolidation; that the terms of the agreement constituting the voting trust do not authorize the trustees who are defendants to vote for the consolidation of the Georgia & Alabama with the Seaboard Air Line and with the Florida Central & Peninsular Railway Company; that these roads cannot be consolidated, because there is no actual physical connection between any of the lines of the Seaboard Air Line and the lines of the Georgia & Alabama; that the consolidation would be contrary to public policy, because the Georgia & Alabama and the Florida Central & Peninsular Railways are competitive, and any contract which would result in the control of the stock would be in violation of section 5800, par. 4, of the constitution of Georgia. This provides:

"The general assembly of this state shall have no power to authorize any corporation to buy shares of stock in any other corporation in this state or elsewhere, or to make any contracts or agreement, whatever, with any such corporation which may have the effect, or be intended to have the effect, to defeat or lessen competition in their respective businesses, or to encourage monopoly; and all such contracts and agreements shall be illegal and void."

Complainants further insist that the scheme of the defendants cannot be carried out for the consolidation or merger of these companies without the unanimous vote of the stockholders of the Georgia & Alabama Railway.

It has appeared sufficiently for the purposes of this hearing that the substantial objections to the proposed consolidation have been

presented in two other proceedings in equity. One of them was begun in the circuit court of the United States for the Eastern district of Virginia (Ryan v. Williams, 100 Fed. 172, 177), and the other in the circuit court of the United States for the Eastern district of North Carolina. In both of these cases an effort was made to obtain an injunction against the proposed merger and consolidation. This was attempted by different stockholders, it is true, and against corporations constituting a part of the system of the Seaboard Air Line, which are not made defendants in this case; but, while the records in these cases have not been produced in their entirety, enough has been brought before the court at the instance of the complainant to show that at least in the United States circuit court for the Eastern district of Virginia there is now pending against the substantial defendants to this bill a hotly contested litigation between a party or parties having an equivalent interest and making a common cause with the complainants here, and that the decision of the controversy pending there would quite effectually conclude the controversy submitted here. In other words, it is sufficiently apparent to the court that the complainant and those acting with him have presented these bills in several jurisdictions along the line of the respondent's system, thus seeking to take the chances of a possible difference of judicial opinion in each territorial division where the powers of a United States circuit court have been invoked. It is even more distinctly apparent, notwithstanding the fact that the complainant's counsel have submitted only a portion of the record of the cause now pending in the circuit court for the Eastern district of Virginia, that the rights of all the parties could well be determined in that jurisdiction, and an effective and conclusive decree there rendered, which would finally determine the controversy, without subjecting the defendants to harassing and vexatious litigation in other jurisdictions, and without contesting in several courts of concurrent jurisdiction a controversy which a proper regard for the dignity and authority of the United States courts would demand should be contested and disposed of in the first circuit court having sufficient jurisdiction of the parties and the cause of action, and in that court alone. The gravest consequences, involving enormous loss, have resulted and may result where courts or judges of concurrent jurisdiction ignore the salutary principles of comity, bring about a conflict of authority, pass conflicting orders, and render conflicting decisions on the same facts and in the same controversy. These produce endless confusion and distrust in the administration of the law, and often reward parties who are stubbornly litigious, who are endowed with greater resources for litigation, and who not infrequently seek to use the courts as pawns in the game they play on the gigantic chessboard marked by the transportation lines of the country. An easy illustration of these injurious consequences may be drawn from the case at bar. The circuit court of the Eastern district of Virginia, it seems, has refused an injunction on the substantial issues presented to the court here. Let us suppose that we should grant the injunction which that learned court refused. The decision there, if appealable, might go

on appeal to the circuit court of appeals of the Fourth circuit; the decision here, to the circuit court of appeals of the Fifth circuit. Thus a conflict of authority, with inevitable loss to investors and embarrassment to the public, might continue on indefinitely.

In the case of Freeman v. Howe, 24 How. 450, 16 L. Ed. 749, the supreme court of the United States remarked:

"A court first obtaining jurisdiction of a cause has a right to decide every issue arising in the progress of the cause."

In commenting upon and somewhat modifying this statement, the court remarks in Buck v. Colbath, 3 Wall. 345, 18 L. Ed. 261:

"It is scarcely necessary to observe that the rule announced is one which has been often held by this and other courts, and which is essential to the correct administration of justice in all countries where there is more than one court having jurisdiction of the same matters. At the same time, it is to be remarked that it is confined in its operation to the parties before the court, or who may, if they wish to do so, come before the court and have a hearing on the issues so to be decided."

Now, in the case of Ryan v. Williams, supra, decided by Judge Waddill, above referred to, the injunction there sought, among other things, to "prevent the consolidation of the Seaboard Air Line System, containing some one thousand miles of road; the Georgia & Alabama Railway, four hundred and fifty-seven miles; and the Florida Central & Peninsular Railway, some nine hundred and seventy-eight miles; aggregating some two thousand four hundred and thirty-five miles." The principal defendants in that case, as in this case, were John Skelton Williams and J. W. Middendorf. The plaintiffs Dady and Rider in the case here were privies with the plaintiff there, and ought to have joined in that suit. There are many cases from courts of high authority supporting this view. In Craig v. Hoge, 95 Va. 275, 28 S. E. 317, it has been held that "a court will refuse to proceed in a case after learning of the existence of a suit previously commenced in another court of concurrent jurisdiction involving the same subject-matter, during the pendency of such prior suit." And in Fertilizer Co. v. Prestwood, 116 Ala. 119, 22 South. 262, the court declared:

"The fact that the chancery court of one county has acquired jurisdiction of the matter in controversy between the same parties will prevent the maintenance of a subsequent bill in the chancery court of another county."

Almost the precise question now before the court has been decided with this view:

"A decree on a bill by a stockholder, for the benefit of himself and all other stockholders who come in, to enjoin the consummation of an agreement of the corporation, is conclusive in a subsequent suit by another stockholder for the same purpose and involving the same question, in the absence of fraud or collusion."

Willoughby v. Stockyards Co., 50 N. J. Eq. 656, 25 Atl. 277; Water Power Co. v. Gray, 6 Metc. (Mass.) 146; Dewey v. Trust Co., 60 Vt. 1, 12 Atl. 224, 6 Am. St. Rep. 84; Dannmeyer v. Coleman (C. C.) 11 Fed. 97; Harmon v. Auditor, 123 Ill. 122, 13 N. E. 161, 5 Am. St. Rep. 502.

In the case of Southern Pac. R. R. v. U. S., 168 U. S. 48, 18 Sup. Ct. 18, 42 L. Ed. 355, a cardinal rule strongly illustrating this view is stated as follows:

"The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, determined by a court of competent jurisdiction as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of persons and property, if, as between the parties and their privies, conclusiveness did not attend the judgment of such tribunals in respect of all matters properly put in issue and actually determined by them."

It is true that this authority relates exclusively to final judgments, but if the final judgment of the Virginia court, as between Mr. Ryan, who, as a stockholder, is privy with the complainants here, would conclusively settle the disputed rights of the parties, it seems clear that this court should give to that court first taking jurisdiction the opportunity to decide it. It has been said that the rule which obtains among the circuit courts of the United States, by which a decision in one circuit court is followed entirely upon like facts, although between different parties, is an extension of the doctrine of res judicata. This, perhaps, would not be contended, however, in this case, where the complainants here and in the circuit court of Virginia are stockholders in the same interest. But even where the parties are different the rule has been approved as convenient, and as one which saves litigation, and which tends toward the unity of decision among the federal courts, other than the supreme court. Office Specialty Mfg. Co. v. Winternight & Cornyn Mfg. Co. (C. C.) 67 Fed. 928. It has been, moreover, held that, on motion for preliminary injunction, even greater effect is given to the prior adjudication than in other cases. Earl v. Southern Pac. Co. (C. C.) 75 Fed. 609. There are, indeed, cases where each court must exercise its independent jurisdiction, and render its independent decree; but it should be a strong case which would justify a court of the United States in granting an injunction affecting great interests, when given sufficiently to understand that another such court, with concurrent jurisdiction upon a plenary bill, has full charge of the same controversy between the same parties or their privies, or, has refused such an injunction. Let us see if this is a case of that strong and controlling character.

There are several grounds upon which complainants insist that they are entitled to relief. The first is that it requires the unanimous consent of the stockholders of the Georgia & Alabama Railway, before the complainants can be permitted to consolidate or merge that company with the Seaboard Air Line or the Florida Central & Peninsular. In support of this proposition they cite the case of Alexander v. Railway Co., decided by the supreme court of the

state of Georgia, and reported in 33 S. E. 866. There the defendant company was enjoined from building a belt line railroad, when it had no authority in its charter to do so. The court held in that case that "proper corporate action" was nothing less than the unanimous consent of every stockholder. There, however, the defendant company was not chartered under the general railroad law of the state; and the court in that case held that, if the road had been under that general law, the company could indefinitely extend its railroad, build branch roads from any points on its line, consolidate with any other railroad company, or lease the property thereof, if not a competing line, build and operate steamboats, etc. "Certainly," the court continues, "the original corporators of the West Point Company would never have recognized as their own the simple charter they obtained, after such additions as these, and numerous others that might be mentioned, had been added to it." In other words, the supreme court of the state seems carefully to distinguish a case like that before them and a case like that before the court; for here the Georgia & Alabama Railway is chartered under this general law, and the court adds that the provisions of the general railroad law are operative when that law constitutes the whole or a portion of the railroad charter. What, then, is "proper corporate action" for the purpose of merger and consolidation, when this is made the policy of the state by its statutory law? Corporate action, then, is the majority vote of the corporation. Cook, Stock. & S. (1st Ed.) 670; 1 Thomp. Corp. § 343. Indeed, the elasticity and expensiveness of the statute of Georgia permitting merger and consolidation of railroads are probably not surpassed by that of any state in the American Union or elsewhere. It is found in section 2179 of the Code, which is as follows:

"Sec. 2179. Any railroad company incorporated under the provisions of this article shall have authority to sell, lease, assign or transfer its stock, property, and franchises to, or consolidate the same with, those of any other railroad company incorporated under the laws of this or any other state or of the United States, whose railroad within or without this state shall connect with or form a continuous line with the railroad of the company incorporated under this law, upon such terms as may be agreed upon," etc.

Nothing can be added to emphasize the unequivocal powers of this express legislative grant. Nor is it properly maintainable that because the defendant John Skelton Williams occupies the positions of a member of the voting trust, president of the Georgia & Alabama Railway, and president of the Florida Central & Peninsular Railway Company, the merger or consolidation brought about through his instrumentality should be now enjoined. The circuit court of the Eastern district of Virginia likewise decided this question. "The fact," said Judge Waddell, in his opinion, "that J. W. Middendorf happened to be a director of the Seaboard & Roanoke and Raleigh & Gaston Railway Companies, a member of the firm of Middendorf, Oliver & Co., making the purchase of this stock, does not necessarily render the sale of the stock to them void, however much it may throw upon him and them the burden of showing, in order to sustain the transaction, that the sale was free from any

taint of wrongdoing, bona fide made, and for a fair consideration." Gas Co. v. Berry, 113 U. S. 322, 5 Sup. Ct. 525, 28 L. Ed. 1003; Leavenworth Co. v. Chicago, R. I. & P. R. Co., 134 U. S. 688, 707, 10 Sup. Ct. 708, 33 L. Ed. 1064; Thomp. Corp. § 4059, and cases cited.

As to the contention of the complainant to the effect that the powers granted by the agreement creating the voting trust did not authorize the consolidation or merger of the Georgia & Alabama Railway with the Florida Central & Peninsular Railway, it is sufficient to point out that the defendant Williams, in his sworn answer, declares that he and his associates do not purpose to use the powers of said voting trust to bring about such consolidation. Since there is no evidence in the record to contradict this answer, which has on this hearing the effect of evidence under oath, the court must take it as conclusive. The consolidation, then, if attempted, will be made in some other way, and no injunction is properly grantable on this ground.

Nor do I attach any importance to the contention that the Georgia & Alabama Railway cannot consolidate with the Seaboard Air Line, because there is at present no actual connection with the two roads. The statute upon this subject must have a reasonable construction. The roads are now separated by less than a dozen miles, and it appears that the intervening track is being laid as rapidly as possible.

Nor, in my judgment, is the consolidation and merger of the two roads contrary to the constitution of Georgia, upon the ground that they are competitive, and because such consolidation might tend to defeat competition and to create monopoly. The Georgia & Alabama and the Florida Central & Peninsular Railways start out from Savannah, at right angles to each other. They serve to transport freight and passengers from widely-separated sections of two states. No point on either road can be reached in any reasonable time by a passenger starting out on the other. It is true that they cross one or two shallow rivers on which small steamboats occasionally ply, but there is nothing in the proof or in the contention of counsel to satisfy the court that the occasional delivery of freight by these roads to the steamboats in question could reasonably constitute a competitive business, in the meaning of the law, or that, if the roads were under identical control, it would tend to create monopoly. The evidence is that most, if not all, the streams in question are spanned by the three powerful roads,—the Southern Railway Company, the Central of Georgia, and the Plant System; and, if the merged railroads of the defendants should attempt an injurious monopoly of the traffic on these important navigable streams, one or the other of the three competitors would promptly neutralize the monopoly. It is not difficult to perceive that the contemplated system of the Seaboard Air Line, instead of tending to defeat competition, must inevitably tend to preserve it. The new system will contribute to the transportation service of the country now so admirably served by the Plant System and its connecting roads, and by the great and powerful system of the Southern Railway, and by the Central of Georgia Railway. Surely, it needs

no argument to justify the statement that three great railroad systems serving the Southern states will do much to prevent and make impossible, rather than to create, monopoly in the railway transportation of these states, and will do much to prevent an injurious control, if any such should be attempted, of the vital functions of the common carrier in a territory which, with all of its expanding interests, promises to be richer than the empire of Rome under a Cæsar or a Trajan.

It is a settled principle of equity that the granting or refusal of an injunction is to be determined by the sound discretion of the court; that it will not be granted where complainant's rights thereto are not clear, and unless an injury more or less irreparable is likely to result. While, of course, all that has been said by the court on this occasion relates exclusively to this hearing, which is preliminary in its character, and does not necessarily prejudice the parties on the final hearing, the conclusion that the complainants' rights are apparently not clear, that no irreparable injury to them is likely to result, and that no illegal action seems justly attributable to the defendants, obliges us to deny the injunction sought.