GOUGE et al. v. HART, Internal Revenue Collector, et al.

(District Court, W. D. Virginia, at Abingdon. December 7, 1917.)

1. INTERNAL REVENUE ⊜⇒28—SUITS "RESTRAINING" COLLECTION OF TAX—CONSTRUCTION OF STATUTE.

In Rev. St. § 3224 (Comp. St. 1916, § 5947), which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court," the word "restraining" is used in its broad popular sense of hindering or impeding, as well as prohibiting or staying, and the provision is not limited in its application to suits for injunctive relief.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Restrain.]

2. INTERNAL REVENUE ⊜⇒28—SALE OF PROPERTY TO PAY TAX—SUIT TO SET ASIDE—PURCHASE BY GOVERNMENT.

The Commissioner of Internal Revenue assessed an internal revenue tax against complainants, for the collection of which the collector levied upon and sold real estate, which was bid in for the government, but remained in the possession of complainants. Held that, under Rev. St. § 3224, which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court," complainants could not maintain a suit to set aside and annul the sale.

3. INTERNAL REVENUE ⊜⇒28—SUIT TO RESTRAIN COLLECTION OF TAX—STATUTE PROHIBITING—WAIVER.

The prohibition of suits to restrain the assessment or collection of a tax, contained in Rev. St. § 3224, cannot be waived by any officer of the Government.

4. UNITED STATES ⊜⇒125—SUIT AGAINST—WHAT CONSTITUTES.

A suit against the Commissioner of Internal Revenue and a collector to set aside a sale of land to the United States, made under an internal revenue assessment, where the land remains in the possession of complainants, and no act has been done by such officers to render them liable as individuals, so that the decree would operate only on the government, is one in effect against the United States, to which it is an indispensable party, and of which a court is without jurisdiction.

In Equity. Suit by E. Gouge and others against John M. Hart, Collector of Internal Revenue, W. H. Osborne, Commissioner of Internal Revenue, and another. On motion to dismiss bill. Motion granted.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Peters & Lavinder and J. S. Ashworth, all of Bristol, Va., for plaintiffs.

R. E. Byrd, U. S. Atty., of Richmond, Va., and Jos. H. Chitwood, Asst. U. S. Atty., of Roanoke, Va., for defendants Hart and Osborne.

John W. Price, of Bristol, Va., for defendant Copenhaver.

McDOWELL, District Judge. This suit in equity was brought by E. Gouge and W. T. Sams, partners doing business under the name of E. Gouge & Co., E. Gouge, Pantha Gouge, and H. T. Campbell, trustee, against John M. Hart, collector of Internal Revenue, W. H. Osborne, Commissioner of Internal Revenue, and S. T. Copenhaver. From the bill it appears that the Commissioner of Internal Revenue, in November 1915, improperly and illegally gave notice of a "proposed" assessment of internal revenue taxes against the firm of E. Gouge & Co., distillers, in the sum of $152,310.31, and that the government contends that such assessment was made in December, 1915. In December, 1916, E. Gouge executed a deed of trust on all of his real estate, except his home, to H. T. Campbell, trustee, to secure certain notes, and at the same time conveyed his home to his wife, Pantha Gouge, for a valuable consideration. Early in 1917 the defendant Hart, Collector, issued a distress warrant, which was levied on all the real estate above mentioned. In April of that year a deputy collector made sale of the real estate levied on. At the sale Copenhaver was the purchaser of one parcel of the land, and all of the rest of the land was bid in by the deputy collector holding the sale for the United States. The relief asked is that the sales be declared void and that E. Gouge & Co. be relieved of the assessment.

Copenhaver answered the bill, asserting that he had, very shortly after the sale, notified the collector that he declined to complete his purchase and that he has no interest in the litigation. The Commissioner and Collector, by the District Attorney, answered the bill on its merits. Subsequently, after numerous depositions had been taken both by the plaintiffs and by the last-named defendants, the latter moved to dismiss the bill. This motion was granted.

[1] 1. Section 3224, Rev. Stats. (Comp. St. 1916, § 5947), reads:

"No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

It should first be said that the fact that the validity of the tax here in question is assailed does not prevent the application of this statute. Snyder v. Marks, 109 U. S. 189, 192–193, 3 Sup. Ct. 157, 27 L. Ed. 901. The question presented by the motion of the defendants the Commissioner and the Collector of Internal Revenue to dismiss the bill, which is first to be considered, is whether the word "restraining" in this statute was intended in the broad, popular sense of hindering or impeding, as well as of prohibiting or staying, or in its narrowest, technical sense, as applicable only to suits praying for restraining orders and injunctions. In State Railroad Tax Cases, 92 U. S. 575, 613, 23 L. Ed. 663, it is said:

"The government of the United States has provided, both in the customs and in the internal revenue, a complete system of corrective justice in regard

to all taxes imposed by the general government, which in both branches is founded upon the idea of appeals within the executive departments. If the party aggrieved does not obtain satisfaction in this mode, there are provisions for recovering the tax after it has been paid, by suit against the collecting officer. But there is no place in this system for an application to a court of justice until after the money is paid. That there might be no misunderstanding of the universality of this principle, it was expressly enacted, in 1867, that 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court.' Rev. Stat. § 3224. And though this was intended to apply alone to taxes levied by the United States, it shows the sense of Congress of the evils to be feared if courts of justice could, in any case, interfere with the process of collecting the taxes on which the government depends for its continued existence. It is a wise policy. It is founded in the simple philosophy derived from the experience of ages, that the payment of taxes has to be enforced by summary and stringent means against a reluctant and often adverse sentiment; and to do this successfully, other instrumentalities and other modes of procedure are necessary, than those which belong to courts of justice."

In Snyder v. Marks, supra, 109 U. S. 189, 193, 3 Sup. Ct. 157, 160, 27 L. Ed. 901) it is said:

"The remedy of a suit to recover back the tax after it is paid is provided by statute, and a suit to restrain its collection is forbidden. The remedy so given is exclusive, and no other remedy can be substituted for it."

However, I am unable to say that the construction of section 3224, as applied to the case at bar, has been bindingly settled. In Nichols v. U. S., 7 Wall. 122, 126, 127, 130, 131, 19 L. Ed. 125, the court had merely to construe the act of February 26, 1845 (5 Stat. 727, c. 22) and the court's reasoning, while highly persuasive, is not here binding. In Cheatham v. U. S., 92 U. S. 85, 88, 89, 23 L. Ed. 561, the court had to construe section 19, Act July 13, 1866, c. 184, 14 Stat. 152, now section 3226, Rev. Stats. (Comp. St. 1916, § 5949), and therefore in so far as the reasoning shows that the court construed section 3224 as applying to any form of proceeding to directly hamper or impede the collection of taxes, it is not here binding. Even more clearly is this true of the reasoning of the court in State Railroad Tax Cases, 92 U. S. 575, 613, 23 L. Ed. 663, as state taxes were there the subject of controversy. In Snyder v. Marks, supra, 109 U. S. 189, 191, 193, 3 Sup. Ct. 157, 27 L. Ed. 901, the sole object of the suit was to restrain the collection of federal taxes. Such being the purpose of the suit, the court did not have to construe section 3224 in respect to equitable relief other than injunctive relief. The same is to be said of Pacific Steam Whaling Co. v. U. S., 187 U. S. 447, 452, 453, 23 Sup. Ct. 154, 47 L. Ed. 253, in which the court had necessarily to decide no more than that judicial relief from an alleged invalid license tax cannot be obtained by the novel method there adopted by the petitioner. In Dodge v. Osborn, 240 U. S. 118, 121, 36 Sup. Ct. 275, 60 L. Ed. 557, the only point decided was that section 3224 forbids entertaining a suit to enjoin the assessment and collection of taxes.

It is argued that Pollock v. Farmers' L. & T. Co., 157 U. S. 429, 431, 433, 554, 15 Sup. Ct. 673, 39 L. Ed. 759, and Brushaber v. Union Pacific R. Co., 240 U. S. 1, 10, 36 Sup. Ct. 236, 60 L. Ed. 493, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414, are in point. In each case a stock-

holder sought to enjoin his corporation from voluntarily paying (without protest) what was alleged to be an invalid federal tax. These were therefore injunction suits. The ruling in each case was that section 3224 did not forbid the maintenance of the suit. These decisions bear on the construction of the statute only in respect to its breadth as applied to injunction suits. The ruling that the statute is not to be so broadly construed as to forbid a stockholder to enjoin his corporation from so paying a disputed tax as to cut off the remedy (section 3226, Rev. Stats.) by subsequent action to recover the tax so paid, does not apply to the case at bar. The court did not in these cases have to decide the meaning of the word "restraining" in respect to a suit brought against revenue officials for the purpose of directly hindering and impeding the collection of a tax. There is a wide difference between the equitable power to prevent a corporation from doing an irremediable injury to its stockholders, and the power asserted here to nullify the government's title under a tax sale. So far as I know, the foregoing exhaust the decisions of the Supreme Court bearing on the question under consideration, and I have found no decision by the Circuit Court of Appeals for this circuit. If I am right in believing that neither court has bindingly construed the statute in respect to a suit such as we have here, the question is at large.

[2] The language used in the Nichols, Cheatham, Snyder, Whaling Co., and Dodge Cases, supra (in addition to which see U. S. v. Pacific R. Co., 27 Fed. Cas. 397, and Calkins v. Smietanka [D. C.] 240 Fed. 138, 146) shows, as it seems to me, that the Supreme Court has, arguendo, construed section 3224 as forbidding such suit as we have here. The statements that sections 3224, 3226, and 3227 (Comp. St. 1916, §§ 5947, 5949, 5950) set forth a "complete system of relief," and one that is "exclusive of all other relief," can be explained, as I think, on no other theory. And it must be admitted that these repeated expressions of opinion, not dropped unthinkingly in passing, but uttered as the result of careful consideration, are so highly persuasive as to be almost binding. None but the most cogent and compelling reasons for a different construction of the statute would justify this court in adopting another construction. Instead of finding cogent reasons for restricting the statute to bills for injunction, it seems to me that the stronger reasons lead to the broader construction:

(a) The necessity for freedom by the executive officers of the government from judicial interference in the matter of collecting taxes is so obvious, and the hardships occasionally thus imposed on taxpayers are so unimportant in comparison with the evil results of having the collection of taxes delayed by appeals to the courts, that it would seem rather clear from such considerations alone that Congress used the word "restraining" in section 3224 in its popular and broad sense, rather than in a technical and very narrow sense. And I have been unable to conceive of any good reason for an intent to prohibit injunction suits, while leaving open to the taxpayer other forms of equitable relief from a tax still in the process of being collected. To nullify a purchase of land by the government in an effort to collect taxes would embarrass the government, practically speaking, about as

much as to enjoin the sale. Such striking inefficiency in legislation suggests strongly a too narrow construction of the language used.

(b) It is a general rule that words used in statutes are to be construed as used in their popular signification, and not in a technical sense, unless the context forbids. See 1 Fed. Stats. Ann. lxii; Id. (2d Ed.) p. 106.

(c) Another rule is that ambiguous statutes are not to be so construed as to bring about an absurd result. 1 Fed. Stats. Ann. lii. If section 3224 is construed as forbidding only injunction suits, we have, unless other reasons forbid it, the result, certainly anomalous, if not absurd, that a court, which is forbidden to enjoin the doing of an illegal act, may, after such act has been done, set it aside as a nullity. And again we have the absurdity of a decree which the defendants can, without being in contempt, disregard and make futile. If this court should declare the sales heretofore made to be void, and set them aside, the defendants could immediately set to work to again sell the same property for the same tax. As the court cannot enjoin them from so doing, they would not be in contempt. It is difficult to believe that Congress could have intended such a result.

(d) The remarkable scarcity (even if not entire absence) of reported cases in which was asked the relief (against federal taxes) here asked would seem to indicate a general concurrence on the part of the bar in the theory that section 3224 forbids, not only injunctions, but also other forms of direct equitable relief. It is true that, where the taxpayer is impecunious and the tax assessed is very large in amount, the remedy afforded by paying the tax and then suing to recover the amount paid may involve great hardship. But many laws (for instance, all criminal laws imposing fines) may operate much more harshly on the poor than on the well-to-do. And the imposition of taxes may involve occasionally the most extreme hardships in isolated cases, without affording a good reason for a strained construction of a statute. In Pacific Steam Whaling Co. v. U. S., supra, 187 U. S. 447, 452, 23 Sup. Ct. 154, 156 (47 L. Ed. 253) it is said:

"It is said that, unless this application can be sustained, the petitioner is without remedy, and that there is no wrong without a remedy. While as a general statement this may be true, it does not follow that it is without exceptions, and especially does it not follow that such remedy must always be obtainable in the courts. Indeed, as the government cannot be sued without its consent, it may happen that the only remedy a party has for a wrong done by one of its officers is an application to the sense of justice of the legislative department."

While it is true that ambiguous statutes are not readily so construed as to bring about general inconvenience or hardship, this doctrine does not seem to apply here. It must be apparent that a tax in excess of, or even approaching, the value of the taxpayer's property, will be very seldom assessed, and practically speaking never assessed, except where based on the ground of an alleged extensive violation of the internal revenue or customs laws. Usually, therefore, the taxpayer's property will afford a sufficient basis of credit to enable him to

borrow and pay the taxes, as preliminary to an action to recover the money.

Counsel for plaintiffs contend that granting the relief sought by the bill would not hamper or retard the collection of the tax. I am unable to concede this. Some of the property was bid in by the Collector for the government. Copenhaver, the purchaser of the remainder of the property, has declined to complete his purchase. If this court nullifies these sales, the government is at least put back in the situation it occupied before the sales were made. If such action by the court would not hinder and impede the collection of a tax, I do not understand the meaning of the words. The fact that the government may, if it sees fit, collect taxes by suit, and that in such event the defendant may contest the validity of the demand, seems to me to be too remotely connected, if connected at all, with the subject under discussion to throw any light on it.

Counsel strenuously urge that the decision in U. S. v. Lee, 106 U. S. 196, 1 Sup. Ct. 240, 27 L. Ed. 171, argues against the propriety of construing section 3224 as prohibiting the suit at bar. It seems to me to be enough to say that in that case the tax had been collected, by purchasing and taking possession of the land, before the action of ejectment was instituted, and that the statute here in question (now section 3224) was never mentioned in deciding the case, because in no wise there involved. The fact that ejectment may lie against either a government officer, or an individual purchaser, in possession of land bought at a tax sale, does not seem to me to afford ground for argument that section 3224 can properly be so construed as to allow to the complainants here a form of relief which directly hinders the collection of a tax. It must be borne in mind that not one penny of the tax assessed here has so far been collected. To set aside the sales made by the Collector will therefore of necessity hinder the collection.

It is an unfortunate fact that the actions of the defendants have not only clouded the title of the complainants to the land, but have rendered the land unmarketable. And this situation may continue for a considerable time. See section 3208, Rev. Stats. (Comp. St. 1916, § 5930). And yet Congress could have contemplated just this result. If the remedy of paying under protest the taxes which are assessed and then suing to recover was intended as the exclusive remedy, the present situation must have been contemplated as one of the occasionally unavoidable hardships incident to taxation. It is, however, not to be supposed that the present unfortunate situation will continue indefinitely. If the government sues to obtain possession of the land, its title (involving the validity of the tax) must be submitted to the judgment of the courts. So, also, if any purchaser from the government sues to obtain possession. And, should any government officer or any purchaser succeed in obtaining possession by act in pais, an action of unlawful entry, or of unlawful detainer, or of ejectment, by the present plaintiffs would lie to test the validity of the tax sale.

It may possibly be, in view of Act March 4, 1913, c. 166, 37 Stat. 1016 (6 U. S. Comp. Stats. Ann. § 5908), amending section 3186, Rev. Stats., that the government has never had a lien as against

Mrs. Gouge and Campbell, trustee. But I do not see that the hardship inflicted on them by the acts of the tax officers is greater than that inflicted on Gouge—if the tax be as invalid and as unjust as complainants allege. And the power of the court does not depend upon the severity of the hardships complained of. If a statute forbids the maintenance of this suit, such fact makes an end of discussion. And section 3224 may—to my mind does—forbid this suit, notwithstanding the great, but temporary, hardships alleged.

[3] It is argued that the fact that the defendants, represented by the District Attorney, had answered to the merits of the bill, and had taken depositions before the motion to dismiss was filed, is a waiver of the foregoing objection to the jurisdiction. I think the entire subject is disposed of by saying that I know of no authority vested in either the defendants or in the District Attorney to waive the prohibition of section 3224. Carr v. U. S., 98 U. S. 433, 438, 25 L. Ed. 209; Utah Co. v. U. S., 243 U. S. 389, 409, 37 Sup. Ct. 387, 61 L. Ed. 791; Stanley v. Schwalby, 162 U. S. 255, 270, 16 Sup. Ct. 754, 40 L. Ed. 960. Section 771, R. S. (Act March 3, 1863, c. 76, § 13, 12 Stat. 741 [Comp. St. 1916, § 1296]) is older than section 3224 (Act March 2, 1867, c. 169, § 10, 14 Stat. 475 [Comp. St. 1916, § 5947]), and the former is general and the latter special. 36 Cyc. 1151.

[4] 2. While it seems to me unnecessary to go further, it may be added that, even if the statute above considered were held not to prohibit this suit, there are other reasons for declining jurisdiction. One is that the government is an indispensable party, and the other is that this is in reality, though not in form, a suit against the government.

(a) It is unnecessary to consider the part of the land bid in by Copenhaver. As to a part of the land, the bill shows that it was bid in by the Collector for the government. If the relief here asked is granted, the government alone will suffer. The officials who are made defendants will not be in the least affected. In no sense do the plaintiffs ask relief against Osborne and Hart in their character as individuals. The sole purpose is to have their acts done under color of law declared void. The cases in which suits may be maintained against government officers are those in which the officer may be regarded as a wrongdoer in his individual character. If the defendant Hart had taken the land into possession, an action of unlawful entry or ejectment would lie against him. So, also, as to an action for damages against the defendants. But such actions would lie because the defendants could be considered wrongdoers as individuals, and the judgment asked would operate on the defendants as individuals. Here no relief is asked, or is possible, which will operate on these defendants. As the decree prayed for will affect and will operate solely on the government, it seems to me that the government is an indispensable party. This principle is well illustrated in Hopkins v. Clemson College, 221 U. S. 636, 649, 31 Sup. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243. It was there held that the prayer for the removal of the dyke could not be granted, as the state of South Carolina was for such purpose a necessary party, but that damages, and possibly injunction, could be granted against the College. See, also, Louisiana v. Garfield, 211 U.

S. 70, 29 Sup. Ct. 31, 53 L. Ed. 92. There a suit by the state of Louisiana against the Secretary of the Interior was brought to establish the title of the state to certain swamp lands. It was held that the government was a necessary party, and the bill was dismissed. In Belknap v. Schild, 161 U. S. 10, 25, 16 Sup. Ct. 443, 40 L. Ed. 599, a patentee of caisson gates sued certain naval officers, praying that the defendants be decreed to account for profits accrued from using the gates, that the defendants be enjoined from continuing to use them, and that the gates in use at the Mare Island Navy Yard be destroyed or delivered up to the plaintiff. The trial court held that the patent was valid, had been infringed, enjoined the defendants and their agents and servants from using the gates, and finally decreed damages against the defendants in the sum of $40,000. The Supreme Court (161 U. S. 27, 16 Sup. Ct. 443, 40 L. Ed. 599) reversed the decree, and remanded the cause, with directions to dismiss the bill, without prejudice to an action at law against the defendants or to a suit against the United States. In the opinion it is said:

"In the present case. the caisson gate was a part of the dry dock in a navy yard of the United States, was constructed and put in place by the United States, and was the property of the United States, and held and used by the United States for the public benefit. If the gate was made in infringement of the plaintiff's patent, that did not prevent the title in the gate from vesting in the United States. The United States, then, had both the title and the possession of the property. The United States could not hold or use it, except through officers and agents. Although this suit was not brought against the United States by name, but against their officers and agents only, nevertheless, so far as the bill prayed for an injunction. and for the destruction of the gate in question, the defendants had no individual interest in the controversy; the entire interest adverse to the plaintiff was the interest of the United States in property of which the United States had both the title and the possession; the United States were the only real party, against whom alone in fact the relief was asked, and against whom the decree would effectively operate; the plaintiff sought to control the defendants in their official capacity, and in the exercise of their official functions, as representatives and agents of the United States, and thereby to defeat the use by the United States of property owned and used by the United States for the common defense and general welfare, and therefore the United States were an indispensable party to enable the court, according to the rules which govern its procedure, to grant the relief sought, and the suit could not be maintained without violating the principles affirmed in the long series of decisions of this court, above cited."

See, also, International Co. v. Bruce, 194 U. S. 601, 24 Sup. Ct. 820, 48 L. Ed. 1134.

The following is from the syllabus of Cunningham v. Macon R. Co., 109 U. S. 446, 3 Sup. Ct. 292, 27 L. Ed. 992:

"The state of Georgia indorsed the bonds of a railroad company, taking a lien upon the railroad as security. The company failing to pay interest upon the indorsed bonds, the Governor of the state took possession of the road, and put it into the hands of a receiver, who made sale of it to the state. The state then took possession of it, and took up the indorsed bonds, substituting the bonds of the state in their place. The holders of an issue of mortgage bonds issued by the railroad company subsequently to those indorsed by the state, but before the default in payment of interest, filed a bill in equity to foreclose their own mortgage and to set aside the said sale and to be let in as prior in lien, and for other relief affecting the property, and set forth the above facts, and made the Governor and the treasurer of the state parties. Those officers demurred. Held, that the facts in the bill show that the state

is so interested in the property that final relief cannot be granted without making it a party, and the court is without jurisdiction.

"Whenever it is clearly seen that a state is an indispenable party to enable the court, according to the rules which govern its procedure, to grant the relief sought, it will refuse to take jurisdiction."

(b) The reasoning leading to the conclusion that this present suit is in reality one brought against the government is of course practically the same. The purpose of the suit is to have the court nullify a claim of ownership of land vested in the government. The possession of the land remains in the plaintiffs. The relief asked cannot operate on the defendants, but can only affect the government. No relief can be given against the defendants in their individual capacity. In the opinion in the case of In re Ayres, 123 U. S. 443, 501, 502, 8 Sup. Ct. 164, 181 (31 L. Ed. 216), it is said:

"This principle is illustrated and enforced by the case of United States v. Lee, 106 U. S. 196 [1 Sup. Ct. 240. 27 L. Ed. 171]. In that case the plaintiffs had been wrongfully dispossessed of their real estate by defendants, claiming to act under the authority of the United States. That authority could exist only as it was conferred by law, and as they were unable to show any lawful authority under the United States, it was held that there was nothing to prevent the judgment of the court against them as individuals, for their individual wrong and trespass. This feature will be found, on an examination, to characterize every case where persons have been made defendants for acts done or threatened by them as officers of the government, either of a state or of the United States, where the objection has been interposed that the state was the real defendant, and has been overruled. The action has been sustained only in those instances where the act complained of, considered apart from the official authority alleged as its justification, and as the personal act of the individual defendant, constituted a violation of right for which the plaintiff was entitled to a remedy at law or in equity against the wrongdoer in his individual character."

See, also, as illustrating the classes of cases which are or are not suits against a state or against the government, Stanley v. Schwalby, 147 U. S. 508, 518, 13 Sup. Ct. 418, 37 L. Ed. 259; Pennoyer v. McConnaughy, 140 U. S. 1, 10, 11 Sup. Ct. 699, 35 L. Ed. 363.

In Oregon v. Hitchcock, 202 U. S. 60, 68–69, 26 Sup. Ct. 568, 570, 50 L. Ed. 935, the state of Oregon filed its bill in the Supreme Court to enjoin the Secretary of the Interior and the Commissioner of the General Land Office from issuing patents to certain lands. The bill was demurred to and dismissed, on the ground in part that the suit was in reality one against the government. It is evident from the opinion that the court acquiesced in the soundness of the contention by the defendants:

"While the nominal defendants are citizens of a state other than Oregon, yet they have no interest whatever in the controversy, and if a decree be rendered against them in favor of the state it will not affect their interests but bind and determine the rights of the United States, the real, substantial defendant."

In Minnesota v. Hitchcock, 185 U. S. 373, 387, 22 Sup. Ct. 650, 655 (46 L. Ed. 954) the right to sue the government had been given by statute. In determining that the government was the real party in interest the court said:

"Now, the legal title to these lands is in the United States. The officers named as defendants have no interest in the lands or the proceeds thereof. The United States is proposing to sell them. This suit seeks to restrain the United States from such sale, to divest the government of its title and vest it in the state. The United States is therefore the real party affected by the judgment, and against which in fact it will operate, and the officers have no pecuniary interest in the matter. If whether a suit is one against a state is to be determined, not by the fact of the party named as defendant on the record, but by the result of the judgment or decree which may be entered, the same rule must apply to the United States. The question whether the United States is a party to a controversy is not determined by the merely nominal party on the record, but by the question of the effect of the judgment or decree which can be entered."

See, also, Naganab v. Hitchcock, 202 U. S. 473, 475, 26 Sup. Ct. 667, 50 L. Ed. 1113; Kansas v. U. S., 204 U. S. 331, 341, 27 Sup. Ct. 388, 51 L. Ed. 510.

There are many illustrations of suits against officers which are not suits against the government. But in all such cases the facts are such that the defendant can be regarded as an individual wrongdoer, and the judgment of the court will operate on the defendant as an individual.

In the case at bar the alleged wrong done complainants cannot be regarded as done by the defendants, as individuals. An assessment against E. Gouge & Co., made by W. H. Osborne, as an individual, would have been a nullity. A distraint and sale of plaintiffs' real estate by John M. Hart, as an individual, would likewise have been a futile absurdity. It is only because the defendants, respectively, occupied the official positions of Commissioner and Collector of Internal Revenue, that their acts have at least such color of authority and legal force as to cloud the title of complainants. The defendants here, therefore, cannot be regarded as wrongdoers in their character as individuals. The complaint is made against them because of acts done officially; and in no sense could the judgment of the court, if the relief prayed for were given, operate on the defendants as individuals. The court admittedly cannot enjoin the defendants from again selling the same land for the same tax. All that the court could do would be to declare that the sales already made shall be set aside and held for naught. Such decree directly operates on the title of the government, but does not, as it seems to me, operate on the defendants.

I am unable to escape the conclusion that this is in reality a suit against the government, and one which no statute authorizes. It follows that the bill must be dismissed.