**LA CROIX v. UNITED STATES.**
No. 1248.

District Court, W. D. Tennessee.
July 27, 1935.

Hugh Magevney, of Memphis, Tenn., for plaintiff.

R. G. Draper, Asst. U. S. Atty., of Memphis, Tenn., for the United States.

MARTIN, District Judge.

This case has been heard on the motion of the United States of America, presented by the assistant district attorney, to dismiss the bill of complaint filed by the plaintiff, who is engaged in the business of operating a slaughterhouse and stockyard and in procuring hog products and in the sale of hog products.

The motion to dismiss questions the right of plaintiff to enjoin the United States of America from collecting the hog processing taxes pursuant to the act of Congress known as the Agricultural Adjustment Act, as amended, 7 USCA § 601 et seq. The government maintains that, under title 26, § 154, USCA, the suit cannot be maintained. Said section of the United States Code provides: "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

[1] The plaintiff maintains, at the outset, that an injunction should be granted for the reason that there is pending in Congress, with high probability of passage, a bill which would prevent the recovery of processing taxes already paid. This court thinks it would be an unwarranted encroachment of the judicial power of the United States upon the legislative branch of government should the court attempt a race of diligence with Congress to defeat the applicability of an act to a pending case. At most, a court has the right to consider the effect of an act of Congress; at least it cannot attempt to defeat proposed legislation before it has become the law. The court therefore could not prop-

erly consider the effect upon an individual of the passage of a pending act which has not become law.

■ The plaintiff contends that the suit is properly brought under section 41, subsection 20, 28 USCA, the act known as the Tucker Act. The authorities presented by counsel on both sides of the skillful and elaborate five-hour argument force the conclusion that the United States of America, pursuant to the Tucker, Act in the section just cited, may be properly sued for a claim for the recovery of money due plaintiff. But this court thinks that the United States of America cannot be enjoined from the collection of the taxes, but only its appropriate officers and agents may be enjoined from collecting or seeking to collect the taxes. The United States of America functions only through its constituted officials; and an injunction directed against the United States by name in its sovereign capacity would not be maintainable. Who would be restrained by such injunction? It is obviously a very different right to sue the United States of America, pursuant to an act of Congress, and to enjoin the United States of America from the performance of some governmental function, such as the collection of taxes.

It is therefore the opinion of this court that the injunction prayed for in this bill is beyond the power of this court to grant, as directed, against the United States of America; and the motion to dismiss the bill will be sustained on this ground.

In the course of the consideration of the numerous questions presented on argument, it has been necessary to consider the constitutionality of the Agricultural Adjustment Act; and, while it is unnecessary for this court to pass upon the constitutionality of this act in the view taken that an injunction cannot be granted against the United States of America in this suit, the court deems it equitable to pass upon the constitutionality of the act and to declare the conclusion reached, because the question will be doubtless again presented by the plaintiff in a new suit which he would naturally bring against the appropriate officials whom he would seek to enjoin from collection of the challenged taxes.

Counsel for plaintiff has made a most able presentation of his argument against the validity of the act. His argument has been clear-cut and comprehensive, and he has brought forward numerous authorities upon which he bases his vigorous attack upon the constitutionality of the act in question. He has been helpful to the court in considering all of the many phases of the case necessary to be met to arrive at a correct determination of this question. The court will not attempt, in this opinion, to review these authorities or to deliver an erudite or elaborate opinion, for the reason that in many districts throughout the United States there are now pending or have been decided like issues here involved; and this case is not, therefore, a case of first impression. The final pronouncement upon the constitutionality of the Agricultural Adjustment Act will be adjudicated by the Supreme Court of the United States, perhaps before the end of the year.

Having reached a conclusion upon the constitutional questions involved, this court deems it more important to act promptly than to delay a decision for the purpose of writing an elaborate opinion discussing the authorities.

■ At the outset, it should be announced that this court holds the firm conviction that a District Court of the United States should not suspend the operation of an act of Congress as unconstitutional, except upon the plainest grounds and surest conviction.

In Nicol v. Ames, 173 U. S. 509, 514, 515, 19 S. Ct. 522, 525, 43 L. Ed. 786, the Supreme Court of the United States said: "It is always an exceedingly grave and delicate duty to decide upon the constitutionality of an act of the congress of the United States. The presumption, as has frequently been said, is in favor of the validity of the act; and it is only when the question is free from any reasonable doubt that the court should hold an act of the lawmaking power of the nation to be in violation of that fundamental instrument upon which all the powers of the government rest: This is particularly true of a revenue act of congress. The provisions of such an act should not be lightly or unadvisedly set aside, although, if they be plainly antagonistic to the constitution, it is the duty of the court to so declare. The power to tax is the one great power upon which the whole national fabric is based. It is as necessary to the existence and prosperity of a nation as is the air he breathes to the natural man. It is not only the power to destroy, but it is also the power to keep alive."

It is the judgment of this court that, before pronouncing an act of Congress unconstitutional and unenforceable, a District Court should be even more carefully deliberate and firmly convinced beyond a reasonable doubt of its unconstitutionality than would be necessary on the part of a Circuit Court of Appeals or of the Supreme Court of the United States. A District Court is a one-man court. There are numerous District Courts; and the result of conflicting views of individual District Judges as to the unconstitutionality of acts of Congress leads to a frequently confusing status in the enforceability of national laws. Wherefore District Courts should be most reluctant to pronounce acts of Congress void. The soundest public policy is conserved when District Courts do not interfere with the operation of acts of Congress. Pending the final decision of the Supreme Court of the United States, nullification of laws in some districts and their enforcement in other districts leads to much confusion and inequality.

The challenge upon the constitutionality of the Agricultural Adjustment Act is, of course, serious; because certain District Judges and the United States Circuit Court of Appeals for the First Circuit, in a two to one decision, Butler et al. v. United States, 78 F.(2d) 1, have already declared the act unconstitutional. Respect for these decisions makes the constitutionality of the act a grave question. With due deference to the distinguished judges with whom this court differs, this court does not feel impelled to follow them. Neither the Supreme Court of the United States nor the Sixth Circuit Court of Appeals has passed upon the question; and this court is therefore free to entertain and express independent views.

First, let us consider the background of the challenged act, the emergency existing at the time of its passage. It is well known that the national situation then existing was extremely desperate. Many men of intelligence and normal courage were almost hopeless of a restoration of normal conditions in America, as a result of what started as an economic depression and ended as an economic collapse. It was evident to men of thought that new measures must be brought forward and enacted into law to restore our country to normal prosperity.

To meet the situation, Congress enacted many new laws which, in bygone days, would have seemed unnecessary, but which, when adopted, met with the sweeping approval of the overwhelming majority of the people of the United States, as shown by the ready spirit of co-operation in which our population entered upon accomplishment of the purposes of these laws. In the national disaster in which our country was placed, nothing appeared more important than meeting the problem of aiding the farmer to continue to produce. It had been a matter of national discussion in the halls of Congress, in the Legislatures of the states, and by people generally, as to what means or measures might be adopted to benefit the farmers. And so the Agricultural Adjustment Act was born.

It remained unchallenged as to its unconstitutionality, so far as this court knows, for many months; and an improvement was noted in the agricultural situation and in the common betterment of conditions as the direct and proximate result of the provisions of the act.

"The devil was sick, the devil a monk
would be;

The devil got well, the devil a monk was
he."

So, when the situation generally had improved, discussion became more current as to the probable unconstitutionality of the act; all of which is said to emphasize the view of this court of the importance of considering the act in the light of the general welfare clause of the Constitution of the United States, article 1, § 8, cl. 1, which provides: "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States."

In the opinion of this court, reasoning practically, if legislation in time of stress could ever have been needed more for the general welfare of the United States than was the legislation for the benefit of farmers at the time of the passage of this act, the court is in ignorance of any such time. A court of the United States should not be, and cannot be under the doctrines pronounced by the Supreme Court of the United States, concerned with the policy of legislation. Provided the legislation is constitutional, the act must be upheld.

It is immaterial, therefore, as to whether the Agricultural Adjustment Act is

deemed expedient or not. Only the constitutionality of the act must be considered here.

■ Counsel for plaintiff maintains that the processing tax is not a tax at all. It seems that the complete answer to this is that the tax is paid into the Treasury of the United States, and, even though earmarked, it is still a tax. The fact that the farmer benefits directly from the tax does not prevent the applicability of article 1, § 8, cl. 1, of the Constitution, where the general welfare is likewise conserved.

■ The most serious question argued by counsel is as to whether, viewing the act in its entirety, there has been a delegation by Congress of the taxing power to the Executive Department. Most careful consideration has been given to the urgent argument of counsel and to the authorities which he cites. But an analysis of the act in its entirety leads this court to the conclusion that, liberally and fairly interpreting this act, resolving every intendment in favor of its constitutionality, the taxing power is not delegated by the act to the Secretary of Agriculture. Congress has singled out and specified cotton, wheat, corn, hogs, etc., as the subject-matter of the processing taxes. It must be noted, further, that Congress has fixed the basis of determining the taxes and has not left to the discretion of the Secretary of Agriculture the fixation of the taxes. Congress has delegated to the Secretary of Agriculture only the calculation of the taxes upon the basis fixed by the terms of the act to obtain a parity through the processing tax of prices of farm products existing in 1909–1914.

This court finds no single passage in the act which vests in the Secretary of Agriculture an unconstitutional delegation of legislative authority and power.

■ The Supreme Court, in its recent decisions, has settled the proposition that, no matter how grave the emergency, Congress will not be permitted to transcend the Constitution. But it would seem manifest that the court did not intend to declare that the emergency may not be considered in resolving intendments in favor of the constitutionality of the act in a doubtful case. Any case may be classified as doubtful, where United States judges who have passed upon a question have expressed divergent views.

■ This court is aware that the opinion here rendered is at the moment a minority view; but, with proper deference to the majority of the courts, an independent view may be maintained here in the absence of authority binding this court. This court holds the opinion that the full import and meaning of article 1, § 8, cl. 1, of the Constitution, has been too much obscured in the consideration by some courts of constitutional questions.

It is the opinion of this court that it was the purpose of the framers of the Constitution that this clause, giving the right to levy taxes to pay the public debts, provide for the common defense and general welfare, was to be applied as a liberal and flexible means of providing for the welfare of the United States in times of disaster; provided, of course, that no other and restraining clause was violated.

■ It seems that some judges have overstressed the interstate commerce clause and the due process clause at the expense of the general welfare clause. The due process clause of the Constitution is not violated by the method in which the Secretary of Agriculture is instructed to calculate applicable taxes to each of the commodities affected by the Agricultural Adjustment Act. Nor is there a lack of uniformity of taxation as required by article 1, § 8, cl. 1. Hogs in Iowa are taxed upon the same basis as hogs in Mississippi; wheat in Illinois upon the same basis as wheat in California; corn in Indiana upon the same basis as corn in Tennessee; and cotton likewise is uniformly treated in all of its producing states.

In the early days of this republic, the expenses of the common government were borne by taxes upon liquor and tobacco. These taxes were not held to be discriminatory. Why, therefore, should taxes levied upon corn, cotton, hogs, and the commodities described in the Agricultural Adjustment Act be regarded as vicious? Protective import taxes, not primarily designed for revenue, were the means of protection of infant industries, and have been continued for the benefit of lusty healthy manufacturing enterprises. Why, then, the argument that the imposition of these farmer benefit processing taxes is class legislation?

The case of A. L. A. Schechter Poultry Corporation v. United States, 55 S. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947, is not in point with the case under discussion, for

the reason that the A. L. A. Schechter Poultry Corporation Case involved the regulation of local business within the state; and the unconstitutionality of the National Recovery Act did not involve any consideration of taxation.

The motion to dismiss the bill is sustained; and an appropriate order will be entered in conformity with this opinion.