**FISHER FLOURING MILLS CO. v. VIERHUS.**

**CENTENNIAL FLOURING MILLS CO. v. SAME.**

**RITZVILLE FLOURING MILLS v. SAME.**
Nos. 7938, 7940, 7939.

Circuit Court of Appeals, Ninth Circuit.
Aug. 15, 1935.

Supplemental Opinion, Aug. 27, 1935.

DENMAN, Circuit Judge, dissenting.

A brief opinion of the majority being delivered from the bench. DENMAN, Circuit Judge, filed a dissent. This was followed by the written opinion of the majority. Circuit Judge DENMAN then filed an amplification of his dissent.

Venables, Graham & Howe and Mc-Micken, Ramsey, Rupp & Schweppe, both of Seattle, Wash., for appellant Fisher Flouring Mills Co.

Shorts & Hartson, Wakefield & Witherspoon, and McMicken, Ramsey, Rupp & Schweppe, all of Seattle, Wash., for appellants Ritzville Flouring Mills and Centennial Flouring Mills Co.

J. Charles Dennis, U. S. Atty., and Owen P. Hughes, Asst. U. S. Atty., and Thomas R. Winter, Sp. Atty., Bureau of Internal Revenue, all of Seattle, Wash., for appellee.

Before GARRECHT, DENMAN, and MATHEWS, Circuit Judges.

GARRECHT, Circuit Judge.

A verified application for a temporary injunction pending appeal has been filed in this court by each of the appellants herein. The applications are identical in form and are here being considered jointly.

On July 1, 1935, separate bills of complaint and petitions for declaratory judgments were filed in these causes in the District Court of the United States for the Western District of Washington, Southern Division, by the appellants, for the purpose of enjoining the collection of processing taxes under the terms of the

Agricultural Adjustment Act, 48 Stat. 31, c. 25, as amended, 7 USCA § 601 et seq., and for a declaration, under the Federal Declaratory Judgment Act (28 USCA § 400), that the processing taxes are illegal and unconstitutional in the respects set forth in the bills and petitions.

On July 11, 1935, the court below rendered an oral opinion, stating that it would enter an order denying the requested restraining order and injunction, temporary and permanent, and declining to render a decree declaratory of the constitutionality or unconstitutionality of the Agricultural Adjustment Act. Thereafter the appellee interposed a motion to dismiss the bills of complaint and the petitions. On July 19, 1935, the lower court entered a final order dismissing the bills and the petitions for declaratory judgments.

Immediately following the order of dismissal, each of the appellants sought to obtain from the Bureau of Internal Revenue an extension of time for paying the processing taxes herein involved. On August 7, 1935, the Bureau formally notified the appellants in writing that such extension of time would not be granted, and demanded payment of the June installment of the taxes not later than August 16, 1935, at which time penalties would commence to attach. Appeals to this court were thereafter perfected, and the present applications for temporary injunctions were filed.

We are not at this time passing upon the constitutionality of the Agricultural Adjustment Act, but are confining our decision solely to the question of the propriety of issuing temporary injunctions pending appeal.

Section 3224 of the Revised Statutes, 26 USCA § 154, provides as follows:

"No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

The principal reason for such a provision, as the Supreme Court has pointed out, "is that, as courts are without authority to apportion or equalize taxes or to make assessments, such suits would enable those liable for taxes in some amount to delay payment or possibly to escape their lawful burden, and so to interfere with and thwart the collection of revenues for the support of the government." Miller v. Standard Nut Margarine Co., 284 U. S. 498, 509, 52 S. Ct. 260, 263, 76 L. Ed. 422.

However, as the Supreme Court in this opinion has indicated that certain extraordinary and exceptional circumstances may render the statute inapplicable, it therefore becomes necessary for us to inquire whether the circumstances alleged by the appellants in these cases are of that extraordinary and exceptional character which, under the decisions of the Supreme Court, would justify us in disregarding or refusing to apply section 3224 (26 USCA § 154).

In the first place, the mere allegation that a taxing statute is unconstitutional does not remove a case from the purview of section 3224. This is graphically illustrated by two Supreme Court decisions delivered by the same Justice, dealing with the same tax, and handed down the same day. In Bailey v. Drexel Furniture Company, 259 U. S. 20, 44, 42 S. Ct. 449, 66 L. Ed. 817, 21 A. L. R. 1432, Mr. Chief Justice Taft held the Federal Child Labor Tax Law to be unconstitutional. In Bailey v. George, 259 U. S. 16, 20, 42 S. Ct. 419, 66 L. Ed. 816, he reversed a decree of the District Court permanently enjoining a collector of internal revenue from collecting a tax assessed under the same Child Labor Tax Law. In the latter case, the Chief Justice, with reference to section 3224, said:

"The averment that a taxing statute is unconstitutional does not take this case out of the section. There must be some extraordinary and exceptional circumstance not here averred or shown to make the provisions of the section inapplicable. Dodge v. Brady, 240 U. S. 122, 126, 36 S. Ct. 277, 60 L. Ed. 560. In spite of their averment, the complainants did not exhaust all their legal remedies. They might have paid the amount assessed under protest and then brought suit against the collector to recover the amount paid with interest."

So in the instant case, the remedy at law there suggested by Mr. Chief Justice Taft is open to the appellants.

It is hornbook law that suits in equity cannot be sustained in any case where a plain, adequate, and complete remedy at law may be had. This fundamental principle is embodied in an enactment by Congress. 28 USCA § 384. Each of the appellants, however, seeks to avoid the application of this rule by setting out the

following allegations in its application for a temporary injunction pending appeal:

"The appellant has no adequate remedy at law:

"(a) In that Congress is on the point of passing a law which destroys any adequate remedy for recovering the said tax, in the event of its payment; that the pendency of said litigation, which will deny to appellant the right to recover any processing tax unconstitutionally exacted, constitutes a real and imminent threat of irreparable loss.

"(b) In that, unless the appellant pays said processing taxes, it and its officers will be subject to heavy criminal penalties provided for in the' Act in addition to the monetary penalty provided for nonpayment of said taxes.

"(c) In that appellant's customers have stated that they will refuse to pay the amount of said tax to the appellant, and that therefore appellant, in the event said tax is invalid, will be unable to collect the same from its customers and will lose the entire amount thereof without any chance of reimbursement.

"(d) In that, in any event, the appellant will be obliged to wage a multiplicity of suits against its said customers for the collection of said taxes, and that appellant, as a consequence, will lose many of its said customers with no possibility of redress for such loss."

We will briefly consider each allegation seriatim.

■ (a) It would be a strange procedure for a court of chancery to measure the adequacy of a remedy at law, not by what the law is at the time the equity suit is filed, but by certain nebulous conjectures of what the law may be at some future time. "Jurisdiction is determined as of the time the suit was commenced." Pacific Telephone & Telegraph Co. v. City of Seattle (D. C.) 14 F.(2d) 877, 879. "Equity acts in the present tense." Continental Securities Co. v. Interborough R. T. Co. (D. C.) 207 F. 467, 471, affirmed 221 F. 44 (C. C. A. 2). The appellants had at the time of the commencement of these suits, and still have, a plain, adequate, and complete remedy at law. They can pay the tax and sue to recover at law. Equity is not to be frightened into assuming jurisdiction by the bugaboo of dire prophecies of what the law may be in the future. "To grant an injunction in an-

ticipation of a possible injury to arise under a law that may never be passed, is, to say the least, unusual. What complainant's rights may be, and what relief should be afforded him in the event of the passage of such a law as he contemplates, cannot now be anticipated." Ryan v. Williams (C. C.) 100 F. 172, 175. It would be an unwarranted encroachment by the judiciary upon the legislative branch of the government "should the court attempt a race of diligence with Congress to defeat the applicability of an Act to a pending case." La Croix v. United States (D. C. W. D. Tenn.) decided July 27, 1935, reported in 11 F. Supp. 817. We are unanimously of the opinion that this court should not be governed or influenced in its action by speculations or predictions regarding future congressional enactments.

■ (b) The provision for "heavy criminal penalties" for nonpayment of the taxes in question is not an unusual one in tax legislation. Punishment can be avoided by paying the tax and then suing for a refund.

■ (c) Appellants' petitions show that heretofore they have passed on the tax to their customers who they claim have now notified them that, if the tax is held invalid the customers will not pay such part of the purchase price of the processed product as reflects the tax, and by reason thereof appellants will be unable to collect these accounts. It is not claimed that appellants have promised their customers any rebate or refund in case the tax is held invalid or that the obligation of such customers to pay for flour purchased from appellants is in any way contingent upon the validity of the tax. Regardless of the ultimate fate of the processing tax, appellants have and will have the right to collect the full purchase price of all flour sold by them. Moreover, these contentions may all be answered by pointing out that, if the tax in question is eventually declared invalid, there will be no occasion for the appellants to demand that their customers reimburse them for the tax, as to any sales made thereafter. As to sales theretofore made, even if the customers refuse to pay the amount of the tax, as averred, the appellants will stand no loss, for they will be entitled to sue for a refund.

■ (d) The mere fact that the appellants' customers may refuse to pay that

portion of the purchase price of flour ascribable to such tax, if the tax is upheld, is not sufficient ground for a court of equity to enjoin the collection of the tax from appellants. The tax is against appellants directly, and, if they choose to pass it on to customers who refuse to pay and litigation results, such will not constitute a "multiplicity of suits" in the equity sense.

■ In their brief before this court, the appellants also rely upon the following paragraph in the bills of complaint filed by them in the court below:

"Plaintiff has been notified by several of its customers during the week immediately preceding this action, who have purchased large quantities of flour which has been processed during the month of May, 1935, and either delivered to said customers or is in transit, and for which purchases plaintiff has not received payment from said customers, that said customers will not pay plaintiff that part of the purchase price of said processed flour which reflects the processing tax thereon, if the Agricultural Adjustment Act, and/or those provisions relating to processing taxes, are declared invalid and unconstitutional by the courts, and said customers have notified plaintiff and demanded that plaintiff do not pay the processing taxes on said purchased flour; that if plaintiff pays said processing taxes for the month of May, 1935, and subsequent months as said processing taxes accrue, and other milling companies engaged in processing wheat do not pay such processing taxes, and in so doing are upheld by the courts, plaintiff will lose said and other customers."

It is clear from the bills of complaint filed in the court below and from the applications for temporary injunctions filed in this court that the appellants are now adding the amount of the processing taxes to their selling price, and that they intend to continue to do so. In their brief, the appellants assert that "milling companies which have not paid the tax by reason of an injunctive order will be in a position to pay to their customers the withheld tax, even though they are presently collecting in the purchase price of flour the amount of the tax." There is nothing in the pleadings or the briefs before us to indicate that the appellants would not likewise "presently collect" the amount of the tax from their customers,

even if we were to grant a temporary injunction. Quite the contrary is inferable from the appellants' statements. This would result in the unjust enrichment of the appellants.

■ It has been suggested that there accrues to the appellants each month a right of demand and suit in the event that the tax be improperly assessed, or in the event that the taxing statute is declared to be unconstitutional. From this it is argued that a multiplicity of suits against the government would result. There is no reference to this point in the pleadings or in the briefs, nor do we believe that it is well taken. There is no need for the appellants to sue each month to recover the taxes in question, in the event the statute is declared unconstitutional. Under the provisions of Rev. St. § 3226, as amended by Revenue Act 1932, § 1103 (a), 26 USCA § 156, the taxpayer is allowed two years from the date of the mailing of the disallowance notice by the Commissioner within which to institute a suit for such refund or credit. According to 26 USCA § 157, all claims for refunds must be presented to the Commissioner within four years next after the payment of the tax in question. In other words, the taxpayer is given a maximum of more than six years from the date of payment within which to file his suit. He need not sue for the taxes monthly, but may seek to recover a lump sum.

■ The appellants also rely upon the following paragraph in their applications before this court:

"That throughout the United States many suits in equity have been instituted by millers and milling companies situated identically with the applicant herein; that in a very great majority of such cases, more than eighty in number, United States District Courts have granted temporary injunctive relief during the pendency of the causes in said District Courts," etc.

From the foregoing, the appellants argue that, unless they are granted the relief sought, they will be placed at a "tremendous disadvantage" in the sale of flour. In other words, the appellants' argument amounts to this: The fact that other milling companies have been awarded injunctive relief in the same situation should compel this court to award to the appellants similar relief, in order

tc equalize competitive conditions, regardless of whether or not we believe such injunctive relief warranted under federal statutes or under the principles of equity. We do not believe that such equalization of competitive conditions, under such circumstances, is one of the duties of a court of chancery.

The majority of the court are of the opinion that, under the showing made in these applications, we are not justified in disregarding the provisions of section 3224 of the Revised Statutes, supra.

Accordingly, the applications for temporary injunctions pending appeal are denied.

DENMAN, Circuit Judge (dissenting).

The sole ground on which the judge below rested his dismissal of the bill is that R. S. § 3224 (26 USCA § 154) prevents enjoining the collection of a tax assessed under the Agricultural Adjustment Act. The merit of this decision is one of the paramount questions to be argued on the appeal.

I am unable to concur with my brethren in the denial of the temporary relief prayed for. In effect the denial of the restraint of the collection of the processing tax for the months of April and May, which it is alleged will be collected immediately through process of distraint or otherwise, may well frustrate entirely the ultimate injunctive remedy of this litigation and prevent a consideration of the merits of the appeal when the case is called for hearing. The collector of internal revenue may then be able to show that the action sought to be enjoined has been performed and that the appeal, regardless of the merits, must be dismissed so far as injunction is the remedy sought. The right to certiorari to the Supreme Court may also be lost.

The argument of the collector disclosed, and we are otherwise properly informed, that a large number of similar bills are pending in the circuit. In some of them the District Judges have decided that the injunctive remedy should be granted and in others that it should be denied. We are advised that the Circuit Court of Appeals for the Tenth Circuit has recognized the propriety of the injunctive relief we are here denying. It is my opinion that a sufficient showing has been made of the debatable character of the question whether R. S. § 3224 (26 USCA § 154), as follows: "Restraining assessments or collection of taxes. No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court"—prevents the use of the injunction in the instant cases, and that therefore the merits of the contention should be given full exploration at the hearing of the appeal. Furthermore, I am of the opinion that opportunity should be afforded to the litigants in the pending cases in the District Courts of the circuit, whose litigation may be frustrated by the denial of this temporary injunction, to present their views on the merits of the error assigned to the decision below.

I agree with my confreres that there is no validity in the contention that the court should govern its action with reference to a possible future enactment of Congress which would prevent litigation for the recovery of these processing taxes. Even if there were a method of determining such future action, I would regard it as improper for a judicial branch of the government to hasten the processes of litigation to frustrate such definitely ascertained future action of the legislative branch. However, I regard is as entirely illogical and inconsistent to assume that, having refused to consider possible future congressional enactments, the taxing statute in question will not continue in the future in its present form.

The applicability of R. S. § 3224 (26 USCA § 154), prohibiting injunctive relief, is challenged on the claim that this case falls within two of the exceptions recognized by the Supreme Court in Miller v. Standard Nut Margarine Co., 284 U. S. 498, 509, 52 S. Ct. 260, 263, 76 L. Ed. 422. That case states:

"Independently of, and in cases arising prior to, the enactment of the provision (Act of March 2, 1867, 14 Stat. 475) which became Rev. St. § 3224 (26 USCA § 154), this court, in harmony with the rule generally followed in courts of equity, held that a suit will not lie to restrain the collection of a tax upon the sole ground of its illegality. The principal reason is that, as courts are without authority to apportion or equalize taxes or to make assessments, such suits would enable those liable for taxes in some amount to delay payment or possibly to escape their lawful burden, and so to interfere with and thwart the collection of revenues for the support of the government. And this court likewise recognizes the rule that, in cases where complainant shows that in

addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector. Dows v. Chicago, 11 Wall. 108, 20 L. Ed. 65; Hannewinkle v. Georgetown, 15 Wall. 547, 21 L. Ed. 231; State Railroad Tax Cases, 92 U. S. 575, 614, 23 L. Ed. 663. Section 3224 is declaratory of the principle first mentioned and is to be construed as near as may be in harmony with it and the reasons upon which it rests. Cumberland Telephone & Telegraph Co. v. Kelly (C. C. A.) 160 F. 316, 321, 15 Ann. Cas. 1210; Baker v. Baker, 13 Cal. 87, 95; Bradley v. People, 8 Colo. 599, 604, 9 P. 783; 2 Sutherland (2d Lewis Ed.) § 454. The section does not refer specifically to the rule applicable to cases involving exceptional circumstances. The general words employed are not sufficient, and it would require specific language undoubtedly disclosing that purpose, to warrant the inference that Congress intended to abrogate that salutary and well-established rule. This court has given effect to section 3224 in a number of cases. Snyder v. Marks, 109 U. S. 189, 191, 3 S. Ct. 157, 27 L. Ed. 901; Dodge v. Osborn, 240 U. S. 118, 121, 36 S. Ct. 275, 60 L. Ed. 557; Dodge v. Brady, 240 U. S. 122, 36 S. Ct. 277, 60 L. Ed. 560. It has never held the rule to be absolute, but has repeatedly indicated that extraordinary and exceptional circumstances render its provisions inapplicable. Hill v. Wallace, 259 U. S. 44, 62, 42 S. Ct. 453, 66 L. Ed. 822; Dodge v. Osborn, supra, page 121 of 240 U. S., 36 S. Ct. 275; Dodge v. Brady, supra. Cf. Graham v. Du Pont, 262 U. S. 234, 257, 43 S. Ct. 567, 67 L. Ed. 965; Brushaber v. Union Pacific R. Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713."

The case of Hill v. Wallace, cited in the Miller Case, arguably recognizes that a tax which creates a profound business disturbance is excepted from R. S. 3224. The cases of Dows v. Chicago, 11 Wall. 108, 20 L. Ed. 65; Hannewinkle v. Georgetown, 15 Wall. 547, 21 L. Ed. 231; State R. R. Tax Cases, 92 U. S. 575, 614, 23 L. Ed. 663, support the proposition that the creation of a multiplicity of suits constitutes an exception from the prohibition of that statute.

As it now stands, the processing tax statute, as administered, imposes a tax of 30 cents a bushel on wheat milled in the far flung businesses of the companies moving for the temporary relief. With the diversity of opinion as to the constitutionality of the act, shown by the varying decisions of the courts, these great businesses are necessarily in apprehension of the price they shall charge for their product in every sale that they make and correspondingly in doubt as to the volume of purchases of raw material for their current and future business. We cannot assume that the price of flour is uniform throughout the United States, for this would be an assumption either that there was an illegal combination fixing a uniform price or that the capitalistic competitive system had ceased to function in the United States. It is arguable that the creation of such doubt and uncertainty as to price in each sale is not an usual incident of tax legislation under Hill v. Wallace, 259 U. S. 44, 62, 42 S. Ct. 453, 66 L. Ed. 822. So much for the effect on this one of the great and fundamental industries of the country in the process of its manufacture and sales.

When we come to the administrative features of the statute, we find it unusual in that there is required a monthly return and payment to the collector. Thus there accrues each month a right of demand and suit in the event that the tax be improperly assessed or in the event that the claimed unconstitutionality should ultimately be sustained. The possible accrual in one year of twelve causes of action against the government, is an uncommon feature of tax measures. Such a situation cannot be dismissed cavalierly as presenting no question of multiplicity of causes.

What this court is doing is to decide finally on a preliminary motion and without hearing on the merits of the appeal that the exceptional circumstances of this case as affecting these industries above described are not within the rule of Miller v. Standard Nut Margarine Co., 284 U. S. 498, 509, 52 S. Ct. 260, 263, 76 L. Ed. 422, regarding "extraordinary and exceptional circumstances" which "render * * * inapplicable" the provisions of R. S. § 3224.

For the purposes of the application for a temporary restraint to keep alive and make possible the exercise of the

injunctive relief sought, it is my opinion that sufficient doubt is raised as to the correctness of the decision below to warrant an order for the temporary injunction pending appeal until that appeal can be heard on its merits.

This is not to indicate what my opinion would be on the question whether or not R. S. § 3224 (26 USCA § 154) prevents injunctive relief in the instant cases. That question should be determined on the hearing of the merits of the appeal when, as suggested, all the litigants in the many cases pending in the District Courts of the circuit should be given an opportunity to present their views.

Supplement to Dissenting Opinion.

The decision rendered by a majority of this court was accompanied by a brief statement to the effect that the showing made by the applicants for temporary injunction was insufficient. My dissenting opinion was next filed, followed by an opinion of the majority. In that opinion the argument presented in my dissent regarding the unusual incident of the processing tax legislation, in that it gave rise to twelve causes of action against the government in a year in a continuous processing business, is treated as if it were of significance that the point was not made in the pleadings or in the briefs. The fact that there are so many other cases, similar to those just decided, pending throughout the circuit, all of which would be affected by ignoring the plain provisions of the processing statute itself for a monthly return, assessment, and payment of tax, reinforces the suggestions I have made regarding the danger in hastily frustrating, in a preliminary proceeding, the rights of appellants to their day in court on the merits of the appeal. In a case of this importance no doubt the combined assistance of many of the members of the bar interested in the merits of the lower court's decision would be available to this court.

What my dissent stated was that the monthly payment of the processing tax gave rise under the statute to twelve causes of action a year, an unusual incident in the federal taxation of business, and hence arguably one of the exceptions to R. S. § 3224 (26 USCA § 154) recognized in Miller v. Standard Nut Margarine Co., 284 U. S. 498, 509, 52 S. Ct. 260, 76 L. Ed. 422. Each one of the companies affected is forced to conserve the evidence of the steps taken in the administrative requirements of the statute to make effective its right to sue. It must be prepared to prove, along with other facts of the month, the volume of the monthly processing to meet any adverse contention of the Treasury Department. In other words, each must take all the preliminary steps necessary to maintain its position in twelve lawsuits a year.

I do not believe it is any answer to this to say another statute avoids a multiplicity of suits if the taxpayer will give up his right to sue at once and combine at the end of six years, as suggested in the majority opinion, his seventy-two causes of action. Assuming that this remedy is "plain," I am unable to see how, under any theory, a six-year or a two-year delay is the "adequate" remedy at law referred to in 28 USCA § 384. It is certainly not a "speedy" relief, and promptitude of the legal redress is a part of its "adequacy."

In one of the cases before us a month's tax is $125,857.30. At the end of six years, at this rate, the seventy-two causes of action would amount to $9,061,451.00. The holding of the majority opinion is that the delay in suing for these gradually increasing huge amounts to avoid a multiplicity of suits is plainly not such an unusual feature in the taxation of business that we need wait for its further discussion at a hearing on the merits of the appeal. I am convinced the litigants in these and the other pending cases, if we had not denied them the opportunity, could have presented strong arguments that the claim of multiplicity of suits is not answered by the fact they may be consolidated after such delay, and such deprivation of the legal right to sue when each cause of action arises.

In many states all contract causes of action or all causes arising out of the same transaction may be joined in a single suit. The majority opinion seems to hold that, as to causes of action so joinable, equity could never consider them as constituting a multiplicity of causes where, in the absence of the consolidating statute, their number would warrant equitable relief. I believe this principle is not so clearly established that it should have been so declared, without argument, on a preliminary hearing.

From the suggestion that the law regarding the right to injunctive relief, which we are now deciding for all the cases in the circuit, should be affected by

the consideration that the litigants here claim they have passed on the burden of the tax to the consumer, and that therefore repayment might lead to "unjust enrichment," two questions arise. One is: What becomes of the cases where, under competition, all of the tax has not been passed on? The other is: Is it of concern here, if the litigants have a legal right to the return of the tax, that the contracts made with the purchasers of the flour may or may not permit the retention of the money by the processers? If the cause had been heard on the merits, quite likely some counsel would have appeared who would have offered the suggestion that, while Congress may properly withdraw the right to reclaim taxes for any reason it pleases, courts, sitting in equity, are not permitted to change an existing legal right to recover a tax, and an interesting and possibly pertinent discussion might have ensued.

I concur in the statement of the majority opinion that a mere claim of unconstitutionality does not warrant equitable relief. This does not answer the point raised in my first opinion that, where the taxing act affected every purchase and every sale of the businesses taxed, it is arguable that this is an unusual incident of taxation. Like the multiplicity of suits per annum in its effect upon the businesses taxed, it seemed a proper matter for deliberate consideration upon a hearing of the appeal on the merits of the right to injunctive relief.

All of this, of course, does not purport to state what my opinion would be on the merits of the decision below denying injunctive relief if the matter had been fully presented, and has nothing to do with the constitutionality of the Agricultural Adjustment Act or the right of these litigants to have their taxes refunded.