### WONER et al. v. LEWIS et al.
#### No. 3951–R.

District Court, N. D. California, S. D.
Dec. 3, 1935.

46

G. L. Aynesworth and Ralph Moradian, both of Fresno, Cal., and Edward F. Treadwell, Charles A. Wetmore, Jr., and Earl F. Treadwell, all of San Francisco, Cal., for complainants.

H. H. McPike, U. S. Atty., and Dorothy Manners Williams, Asst. U. S. Atty., both of San Francisco, Cal., for defendant John V. Lewis.

ROCHE, District Judge.

I. This is a bill of complaint for declaratory judgment and injunction by certain cotton growers seeking equitable relief from the imposition of a tax under the Bankhead Cotton Control Act (7 U.S.C.A. § 701, et seq.). The collector of internal revenue and certain ginners are named as defendants. The prayer is that the act be declared unconstitutional; that the collector be enjoined from collecting the tax; and that a mandatory injunction issue directing the collector to issue bale tags to

cover plaintiffs' cotton crop. The plaintiffs offer to pay the amount of tax into court and put up a bond for the amount of interest thereon.

Two motions are now before the court. The plaintiffs are seeking to obtain a preliminary injunction, and the defendants have moved to dismiss the plaintiffs' bill on the grounds that no facts are stated entitling plaintiffs to relief in equity, and that the court has no jurisdiction.

II. Counsel have agreed that the issue of constitutionality should not be argued at this time because of the urgency and necessity of an early determination of this controversy. The issues in this court have been limited by mutual consent to jurisdiction and to the propriety of issuing an injunction.

Aside from this, the United States Supreme Court frowns upon the decision of constitutional questions without a trial to establish the facts: "But where the legislative action is suitably challenged, and a rational basis for it is predicated upon the particular economic facts of a given trade or industry, which are outside the sphere of judicial notice, these facts are properly the subject of evidence and of findings. With the notable expansion of the scope of governmental regulation, and the consequent assertion of violation of constitutional rights, it is increasingly important that when it becomes necessary for the Court to deal with the facts relating to particular commercial or industrial conditions, they should be presented concretely with appropriate determinations upon evidence, so that conclusions shall not be reached without adequate factual support." Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, 210, 55 S.Ct. 187, 192, 79 L.Ed. 281. Therefore, the declaratory judgment provisions of the plaintiffs' bill will not be considered.

III. The Circuit Court of Appeals for the Ninth Circuit, in the case of Merchants Packing Co. v. Rogan, 79 F.(2d) 1, 2, September 24, 1935, held that it was permissible to issue a temporary injunction preventing the collection of hog processing taxes pending an appeal from an order of the District Court denying such an injunction. In distinguishing the Fisher Flouring Mills Case (C.C.A.) 78 F.(2d) 889, the court said: "The situation is changed by amendment to the law affecting the remedy of a taxpayer to recover an invalid tax." The amendment to the Agricultural Adjustment Act made the remedy somewhat uncertain by providing that no processor could recover any tax paid by him (in case the act was unconstitutional) if he had passed it on. 7 U.S.C.A. § 623(d).

Plaintiffs have sought to bring themselves within the purview of the Rogan Case by alleging that the above amendment applies also to the Bankhead Act. It is contended that the Agricultural Adjustment Act and the Bankhead Act are part of one governmental policy, that the Bankhead Act states in its preamble that one of its purposes is to raise revenue to enable the payment of additional benefits to cotton producers under the Agricultural Adjustment Act, and that, while the two acts are in one sense separate, they should be read together in determining the governmental policy. This contention is based primarily upon the fact that several sections of the Agricultural Adjustment Act refer to various matters "in this title." Plaintiffs argue that this means title 7 of the United States Code (7 U.S.C.A.) wherein both acts are codified.

Such reasoning is unsound. There are two divisions to the Agricultural Adjustment Act, title 1 and title 2 (48 Stat. 31). "Title," as used in the Agricultural Adjustment Act, doubtlessly refers to title 1 of that act, and not to title 7 of the Code. This conclusion is lent support by the well-known fact that Congress never enacts legislation embodying the terminology of the Code, but leaves the codifiers free to make the needed changes in language. This is evident because in the Code the word "Title" has been stricken and the word "Chapter" inserted in its place. The Bankhead Act has its own provision for the refund of taxes in section 20 (7 U.S. C.A. § 720). The Agricultural Adjustment Act has its own, section 21 (7 U.S. C.A. § 623). There is no ground for supposing that Congress amended the Bankhead Act, or meant it to be governed, by the amendment applying to the Agricultural Adjustment Act. A reading of the acts indicates that they are completely independent and that the provisions of one are in no way applicable to the other. For these reasons the Rogan Case is not controlling.

Plaintiffs have cited several authoritative decisions to the effect that if a taxing statute is ambiguous, the taxpayer

48 ·

should not be made to bear the brunt of the ambiguity. Such is the law, but here no ambiguity has been shown.

IV. The procedure under the Bankhead Act is this: A tax is imposed upon the ginning of cotton. The Secretary of Agriculture, taking into consideration various factors, makes allotments to cotton producing states, and to the cotton growers in those states, evidenced by certificates which exempt such cotton from the Bankhead Act tax. The ginners are put under bond, furnished with reports, receipts, certificates, and bale tags, and charged with the duty of making reports for all cotton ginned by them and paying the tax thereon, or in lieu of the tax, producing an equivalent amount of tax exempt certificates.

The ginners, of course, refuse to gin, unless the growers will pay the tax or produce exemption certificates. Cotton cannot be sold or moved out of the county of its production without having bale tags affixed. Payment of the tax or the production of exemption certificates is evidenced by the affixing of "bale tags" to each bale.

Thus a grower can escape the tax up to the amount of cotton he is allotted, but over that amount he must pay a tax of fifty percent of the market value of the cotton.

V. The crux of this case is found in Revised Statutes, § 3224 (26 U.S.C.A. § 154, see 26 U.S.C.A. § 1543): "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." Plaintiffs are faced at the outset with a plain statutory prohibition of a suit to enjoin a tax. Unless they can avoid its application to the present controversy, they cannot prevail. They have not challenged the legality of section 3224.

There is no dispute that the statute was enacted in order to avoid vexatious injunctive suits and to allow the government to collect its revenues for governmental purposes. Likewise, it is merely one phase of a complete system of tax collection, and redress for illegally collected taxes. See Snyder v. Marks, 109 U.S. 189, 3 S.Ct. 157, 27 L.Ed. 901; State Railroad Tax Cases, 92 U.S. 575, 613, 23 L.Ed. 663; Bailey v. George, 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed. 816.

■ It has long been established that the proper method of assailing the constitutionality of a tax, and preventing financial loss under it, is to pay the tax and then sue for a refund through the proper channels. Such a procedure has been held adequate. Rev.St. § 3226 (26 U.S.C.A. §§ 1672–1673). Snyder v. Marks, supra. The United States Supreme Court has at least, however, in two instances allowed exceptions to this mode of redress. Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822; Miller v. Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422. See, also, Graham v. Du Pont, 262 U.S. 234, 43 S.Ct. 567, 67 L.Ed. 965.

Plaintiffs have sought to bring themselves within the compass of Hill v. Wallace and Miller v. Nut Margarine Co. The gist of those decisions seems to be that sections 3224 and 3226 are no more than an enactment of the previous rule of the courts on the subject, and if a party can make a proper showing of exceptional and extraordinary circumstances in themselves justifying equity's intervention, he may have his equitable relief by enjoining the tax's collection.

What is the scope of this exception? The Supreme Court has not attempted to lay down any general formula, neither did it undertake to define the meaning of its phrase "special and extraordinary circumstances."

The Miller Case was an exception to the mandate of section 3224 because the actions of the collector in that case were inexplicable. He sought to tax the taxpayer's product under the Oleomargarine Tax Act after repeated court decisions, and his own rulings held that it was not possible to do so, and after the taxpayer, relying on the collector's rulings, had established his business of selling such products.

"His determination that respondent's product was oleomargarine and taxable under the act was erroneous, and, in view of his earlier interpretations and the court decisions which had become final, must be held arbitrary and capricious." 284 U.S. 498, at page 508, 52 S.Ct. 260, 263, 76 L.Ed. 422.

"Petitioner acquiesced in the injunctions granted in Rhode Island and the District of Columbia and did not assess any tax upon identical products contemporaneously being made by complainants in such suits, and directed enforcement against respondent's entire product." 284 U.S. 498, at page 510, 52 S.Ct. 260, 263, 76 L.Ed. 422.

In the Hill Case, the Future Trading Act imposed a tax of 20 cents a bushel on

all contracts of sale of grain for future delivery, except sales made on "contract markets" designated as such by the Secretary of Agriculture. An injunction was held proper because of threatened harm to the plaintiffs and to the country: "To pay the heavy tax on each of *many daily transactions* * * * and then sue to recover it back would necessitate a *multiplicity of suits,* and, indeed, would be impracticable. For the Board of Trade to refuse to apply for designation as a contract market in order to test the validity of the act would stop its 1,600 members in a branch of their business most important to themselves and to the country." 259 U.S. 44, at page 62, 42 S.Ct. 453, 456, 66 L.Ed. 822.

It is settled, however, that the mere illegality or unconstitutionality of a tax is no ground for avoiding section 3224. Bailey v. George, 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed 816; Dodge v. Osborn, 240 U.S. 118, 36 S.Ct. 275, 60 L.Ed. 557.

Likewise as to the assessment clouding the title to plaintiffs' property. Dodge v. Osborn, supra.

And in this circuit, at least, imposition of heavy fines or penalties is insufficient to invoke equitable aid. Fisher Flouring Mills Co. v. Vierhus (C.C.A.) 78 F.(2d) 889, 891.

What have plaintiffs alleged in addition to the above? That they are cotton growers with a substantial trade; that because of the Bankhead Act, ginners refuse to gin their cotton unless the tax is paid; that no one will transport it or buy it unless the tax is paid, and it cannot be sold or transported unless relief is granted. Then, as one ground of equitable jurisdiction, plaintiffs allege that the Agricultural Adjustment Act amendment, previously referred to, applies to the Bankhead Act so as to give an inadequate legal remedy. It is sufficient to say that the applicability of the amendment has already been discussed and denied.

After setting out that the collector proposes to levy the tax as soon as plaintiffs bring in their cotton to be ginned, and, if not paid, to refuse to issue bale tags, certain allegations are made to show that irreparable injury will be done: Their planting area and production is restricted; they are limited and controlled in the price they receive because of the tax; the plaintiffs are forced to pay the tax because it is so high and the market price of cotton so low that it cannot be passed on; the tax is so large that it cannot be paid, and if it could, it would necessitate a multiplicity of suits to recover it in event the act is unconstitutional; the benefit of a large foreign market in cotton is lost. Then come allegations as to the inadequacy of the legal remedy: The collector could not satisfy a judgment against him, and Congress has failed to provide funds to repay the tax if it is declared unconstitutional.

It will be noted that nowhere is there a direct averment that the plaintiffs have cotton in excess of any allotment made them by the Secretary of Agriculture. But keeping in mind the need for haste, and the importance of the substantive questions involved, and invoking the rule of liberal interpretation of the pleadings, it can be said that it is inferable that the plaintiffs have such nonexempt cotton. And such is the situation shown by an affidavit filed by one of their attorneys who avers that the tax will amount to twenty thousand dollars.

In brief, plaintiffs allege that they have no adequate legal remedy, that they suffer irreparable injury through damage to their business, and that there will be a multiplicity of suits.

VI. One basis for the exercise of equitable jurisdiction is multiplicity of suits. Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822; Donovan v. Pennsylvania Co., 199 U.S. 279, 26 S.Ct. 91, 50 L.Ed. 192.

Plaintiffs have not set up any facts, other than a mere general allegation, to show how a multiplicity of suits will occur. The ginning season lasts approximately four months. The practice is not to assess a tax on each bale, but to total the tax by the month, so that in the event the tax is declared unconstitutional, plaintiffs would each have not more than three or four causes of action a year. That can hardly be termed a sufficient multiplicity to avoid applying section 3224, especially when the suits are joinable under section 427 of the California Code of Civil Procedure. Where the tax was on daily processing, and where returns had to be made each and every month, the Circuit Court of Appeals for this circuit held there was not a sufficient multiplicity to justify equitable aid. Thus this point is definitely settled contrary to plaintiffs' position. Fisher Flouring Mills Co. v. Vierhus, supra. See, also, Dodge v. Osborn, supra; Matthews v.

Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L. Ed. 447; Boise Artesian Water Co. v. Boise City, 213 U.S. 276, 29 S.Ct. 426, 53 L. Ed.. 796.

VII. Relief in equity is justified where there is no adequate legal remedy. Dr. Miles Medical Co. v. Park Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502; Dill v. Ebey, 229 U.S. 199, 33 S.Ct. 620, 57 L. Ed. 1148. But if there is an adequate remedy at law, equity cannot assume jurisdiction. 28 U.S.C.A. § 384. It appears here that unless other circumstances change it, there is an adequate legal remedy.

Two Ninth Circuit decisions deal with the propriety of issuing preliminary injunctions: Fisher Flouring Mills Co. v. Vierhus, supra; Merchants· Packing Co. v. Rogan, supra. Neither of these cases is on all fours, but the reasoning of the Fisher Case is so pertinent that this court deems it controlling. There the court, after disposing of various allegations concerning irreparable injury, criminal penalties, etc., turned its attention to the question whether under the Agricultural Adjustment Act a sufficient legal remedy was afforded to warrant a holding that section 3224 was applicable, and that adequacy of the legal remedy was ground for denying equity jurisdiction. It was said:

"Suits in equity cannot be maintained in any case where a plain, adequate, and complete remedy at law may be had. * * * Each of the appellants, however, seeks to avoid the application of this rule. * * *

"The appellants had at the time of the commencement of these suits, and still have, a plain, adequate, and complete remedy at law. They can pay the ·tax and sue to recover at law."

The remedy prior to the amendment of the Agricultural Adjustment Act by the addition of section 21 (7 U.S.C.A. § 623), with the exception of certain minor discrepancies as to the time for filing suits, was substantially the one now given by section 20 of the Bankhead Act (7 U.S.C.A. § 720). It would appear that the reasoning and holding of the Fisher Case would preclude the plaintiffs here, for section 20 gives the usual remedy of paying the tax when due and suing later to recover it.

The arguments concerning the inability of the collector to respond to a judgment is not well taken. Section 20 of the Bankhead Act (7 U.S.C.A. § 720) incorporates the general internal revenue law applicable to suits and refunds. In that connection, section 842 of title 28 of the United States Code (28 U.S.C.A. § 842) provides: "When a recovery is had * * * against a collector * * * for the recovery of any money exacted * * * by him * * * in the performance of his official duty, and the court certifies that there was probable cause for the act done * * * the amount so recovered shall * * * be paid out of the proper appropriation from the Treasury." See United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598; United States v. Jefferson Electric Co., 291 U.S. 386, 396, 54 S.Ct. 443, 78 L.Ed. 859; Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828; Graham v. Goodcell, 282 U.S. 409, 430, 51 S.Ct. 186, 75 L.Ed. 415; Smietanka v. Indiana Steel Co., 257 U.S. 1, 42 S.Ct. 1, 66 L.Ed. 99.

As to the objection that no appropriation has been made, that contention is premature, for the act has not yet been declared unconstitutional.

In any event, the constitutionality of this act will be decided soon. If it is constitutional, plaintiffs lose nothing by a denial of their motion for an injunction. If it is unconstitutional, it will not be collected after it is so declared, and the plaintiffs can sue to recover any money theretofore paid. It narrows down to whether the inadequacy of a legal remedy can be predicated upon a slightly greater tardiness than the equitable remedy, inasmuch as plaintiffs would have to pay the tax into court even if their injunction were granted. Plaintiffs have produced no authority showing that to be the law, and court knows of none.

In Merchants Packing Co. v. Rogan, previously referred to, the Circuit Court of Appeals allowed the issuance of a preliminary injunction in a hog processing tax case. But that was after the previously noted amendment to the Agricultural Adjustment Act which somewhat obscured the legal remedy available to the taxpayer, and court put its decision upon that ground. The case has no application and is not controlling here.

VIII. As a corollary of the rule that equity assumes jurisdiction if the legal remedy is inadequate, equity necessarily will give relief if otherwise irreparable injury would be done to the complainants.

■ As one ground of irreparable injury, plaintiffs have alleged the Bankhead Act controls and limits the area they can give to the production of cotton. This is not strictly true. They are free to raise as much cotton as they desire, subject to a tax should they gin any of it not exempt.

In alleging irreparable damage, the plaintiffs have not stated whether or not there will be direct financial loss to their business. In other words, while the loss of the foreign market is set up, as the court understands it, the Bankhead Act brings higher prices for a decreased quantity of cotton. The plaintiffs have not said that this total price will be any smaller than the amount they would have received at a lower former rate for a larger quantity of their product.

Counsel suggested the tax here was so great, being 50 per cent. of the market value of cotton, that the difference in rate alone would distinguish the Fisher Case wherein the tax was 30 cents per bushel of wheat. That amounted to about 33 per cent. The difference between it and the Bankhead Act tax is not sufficient to validate counsels' contention. Furthermore, it is doubtful if the mere rate of tax would be grounds for an injunction where a remedy of suing for a refund is provided, and no other extraordinary circumstances were present. See Brushaber v. Union Pac. R. Co., 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A. 1917D, 414, Ann.Cas. 1917B, 713; McCray v. United States, 195 U.S. 27, 24 S. Ct. 769, 49 L.Ed. 78, 1 Ann.Cas. 561. Cf. Magnano Co. v. Hamilton, 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109.

In this connection it is interesting to note that plaintiffs assert in paragraph 14 of their complaint that they are unable to pay the tax, yet in paragraph 19 offer to pay the full amount into court.

The plaintiffs have not by their allegations shown irreparable injury. They have said little more than that the tax is being enforced, is injuring them somewhat by causing them the loss of foreign markets (see Magnano Co. v. Hamilton, supra), and is unconstitutional. It does not appear that they have or will sustain any greater injury than was suffered by the litigants in the Fisher Case. Even if this injunction were granted, plaintiffs must pay the tax into court, and as before pointed out, the only advantage to them is a slight saving in time. A consideration of that nature should not be permitted to stand in the way

of and is not an answer to section 3224 and the collection of governmental revenue. The statute was designed for precisely just such situations. As was said: "The principal reason is that, as courts are without authority to apportion or equalize taxes or to make assessments, such suits would enable those liable for taxes in some amount to delay payment or possibly to escape their lawful burden, and so to interfere with and thwart the collection of revenues for the support of the government." Miller v. Nut Margarine Co., 284 U.S. 498, 509, 52 S.Ct. 260, 263, 76 L.Ed. 422.

■ It has been fluently urged that the great hardship imposed under the Bankhead Act is sufficient justification for disregarding section 3224.

But where the hardship was the selling of complainant's homestead for failing to pay assessed taxes, it was held proper to deny injunctive relief because of section 3224. Staley v. Hopkins (D.C.) 9 F.(2d) 976. And section 3224 was held to bar a suit to set aside a sale of real property made in pursuance of distraint proceedings. Gouge v. Hart (D.C.) 250 F. 802; Id., 251 U.S. 542, 40 S.Ct. 179, 64 L.Ed. 406.

As said before, the only hardship on plaintiffs here is a slight delay in recovering their money if the tax is held unconstitutional, and perhaps some financial injury to their business (though it has not been alleged). In this connection the Supreme Court has said:

"Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained. * * * Property rights must yield provisionally to governmental need. Thus, while protection of life and liberty from administrative action * * * may be obtained promptly by the writ of habeas corpus * * * the statutory prohibition of any "suit for the purpose of restraining the assessment or collection of any tax" postpones redress for the alleged invasion of property rights. * * *

"Where only property rights are involved, mere postponement of the judicial inquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate. * * * Delay in the judicial determination of property rights is not uncommon where it is essential that govern-

mental needs be immediately satisfied." Phillips v. Commissioner, 283 U.S. 589, 595, 51 S.Ct. 608, 611, 75 L.Ed. 1289.

IX. The court's attention has been called to the action of the Supreme Court on the 25th of November, 1935, in granting certiorari (296 U.S. 569, 56 S.Ct. 249, 250, 251, 80 L.Ed. ——) in certain suits seeking to determine the constitutionality of the rice processing tax under the Agricultural Adjustment Act, and allowing temporary restraining orders therein.

It appears those cases are comparable to the Circuit Court of Appeals holding in Merchants Packing Co. v. Rogan, which already has been distinguished. The Supreme Court cases likewise are inapplicable to the present controversy.

X. Plaintiffs urge that the constitutionality of the act being doubtful, the preliminary injunction should issue because its use was designed for just such a situation. But that argument overlooks three factors: First, in this proceeding we are not deciding or concerned with constitutional questions; second, there is a presumption of constitutionality until the law has been declared unconstitutional; and, third, conceding its unconstitutionality, that ground alone is insufficient upon which to issue an injunction.

Plaintiffs have not alleged facts at all similar to those in Hill v. Wallace and Miller v. Nut Margarine Co. For the purposes of this case, the broadest possible interpretation was given the theory underlying those cases, but it is the opinion of the court that the plaintiffs are in no manner able to invoke the doctrine laid down therein. In the words of the Supreme Court: "But these allegations are wholly inadequate under the hypothesis which we have assumed solely for the sake of the argument, to sustain jurisdiction, since it is apparent on their face they allege no ground for equitable relief independent of the mere complaint that the tax is illegal and unconstitutional and should not be enforced,—allegations which, if recognized as a basis for equitable jurisdiction, would take every case where a tax was assailed because of its unconstitutionality out of the provisions of the statute [section 3224 (26 U.S.C.A. § 1543)], and thus render it nugatory, while it is obvious that the statute plainly forbids the enjoining of a tax unless by some extraordinary and entirely exceptional circumstance its provisions are not applicable." Dodge v. Osborn, 240 U. S. 118, at page 122, 36 S.Ct. 275, 276, 60 L.Ed. 557.

Injunctions are not to be issued lightly: "There is no power, the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing an injunction. It is the strong arm of equity, that never ought to be extended, unless to cases of great injury, where courts of law cannot afford an adequate and commensurate remedy. * * * The right must be clear, the injury impending, and threatened so as to be averted only by the protecting preventive process of injunction." Truly v. Wanzer, 5 How. 141, 142, 12 L.Ed. 88.

The prompt collection of the revenue is one of the most important functions of government. "Taxes are the life blood of government, and their prompt and certain availability an imperious need." Bull v. United States, 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421.

And so the plaintiffs must pay first and litigate afterwards.

XI. Therefore it appears that this court is without jurisdiction to enjoin the collection of the tax under the Bankhead Act, or to hear and determine the issues presented by the bill of complaint because:

1. Section 3224 of the Revised Statutes prohibits the maintaining of suits to enjoin the collection of taxes.

2. The bill of complaint does not allege facts entitling the plaintiffs to relief in equity.

3. Plaintiffs have a plain, adequate, and complete remedy at law.

An order will be drawn denying plaintiffs' motion for a preliminary injunction, and granting defendants' motion to dismiss the bill of complaint.